# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| RICHARD and MELBA AGUILAR, et al. ) | |
| ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:14-CV-00985 |
| ) | |
| PNC BANK, N.A., ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT PNC BANK'S REPLY MEMORANDUM
## IN SUPPORT OF ITS MOTION TO DISMISS

Defendant PNC Bank, N.A. ("PNC Bank") respectfully submits this reply brief in support of its motion to dismiss.

## INTRODUCTION

In its Memorandum in Support of its Motion to Dismiss ("Memo.," Dkt. #18), PNC Bank cited numerous cases in support of specific legal principles establishing that, even if the Court accepts all the factual (rather than conclusory) allegations in Plaintiffs' First Amended Complaint ("Amended Complaint") as true, Counts IV-IX lack merit as a matter of law. In response, Plaintiffs' Opposition brief ("Pls.' Opp.," Dkt. #21) is 40 pages of regurgitation of the allegations in the Amended Complaint with almost no legal analysis. Indeed, Plaintiffs fail to respond to the legal arguments raised in PNC Bank's Memorandum, and they fail to mention, much less distinguish, the cases cited by PNC Bank.

"A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is a good point despite the lack of supporting authority or in the face of contrary authority, forfeits the point." Miller UK Ltd. v. Caterpillar, Inc., 2014 WL 67340, at *5 (N.D.

Ill. Jan. 6, 2014); Sure Fill & Seal, Inc. v. GFF, Inc., 2012 WL 5199670, at *5 n.5 (M.D. Fla. Oct. 22, 2012).  The foregoing principle applies squarely here.  When faced with PNC Bank's Motion to Dismiss, Plaintiffs simply re-alleged their Amended Complaint. By failing to address the legal arguments raised by PNC Bank, Plaintiffs effectively conceded that their claims lack merit and should be dismissed.

## ARGUMENT

I. **The Court Should Dismiss Plaintiffs' RICO Conspiracy Claim, Because The Amended Complaint Does Not Allege The Existence Of An Enterprise Or An Agreement To Assist The Enterprise.**

PNC Bank moved to dismiss Plaintiffs' RICO claim on two grounds: (1) lack of an ascertainable RICO enterprise structure, and (2) failure to plead an agreement to participate in a RICO enterprise.  PNC Bank also moved to dismiss the RICO claims of the 77 Plaintiffs who never held accounts with PNC Bank on the grounds that they lacked standing under RICO.

In response, Plaintiffs largely just quote from the Amended Complaint.  The cases Plaintiffs do cite are almost entirely general conspiracy cases, not RICO cases.  The Opposition addresses RICO elements that PNC Bank did not contest (at least at this pleading stage), and it confuses the elements that are contested.  Altogether, Plaintiffs' Opposition provides no grounds for refuting the cogent arguments made by PNC Bank, and the RICO conspiracy claim should be dismissed.

    A. **The Non-Customer Plaintiffs Do Not Have Standing Under RICO.**

In order to have standing to assert a civil RICO claim, a plaintiff must establish that a RICO predicate act "not only was a 'but for' cause of his injury, but was the proximate cause as well."  Hemi Grp., LLC v. City of New York, 559 U.S. 1, 9 (2010).  Proximate cause under RICO requires a "direct relation between the injury asserted and the injurious conduct alleged."

Id.  The proximate cause required to establish RICO standing is a higher showing of causation than that necessary in standard tort claims.  See Lerner v. Fleet Bank, N.A., 459 F.3d 273, 278 (2d Cir. 2006) ("A plaintiff must make a different showing of proximate cause – one that is often more difficult to make – when bringing suit under the RICO statute than when bringing a common-law cause of action.").

In its Memorandum, PNC Bank argued that the 77 Plaintiffs who never held accounts with PNC Bank could not show that their injuries were proximately caused by PNC Bank because they were not the targets of any alleged predicate act.  (Memo. at 15).  In response, Plaintiffs make two arguments: (1) that PNC Bank is liable to every person who foreseeably could be harmed by its actions; and (2) that PNC Bank is liable for all injuries caused by its co-conspirators.  (Pls.' Opp. at 21-29).

Plaintiffs' arguments completely miss the point.  PNC Bank moved to dismiss the RICO claims of the 77 non-customer Plaintiffs based upon lack of standing.  Neither of Plaintiffs two arguments address this issue.  First, foreseeability is **not** the standard for causation under RICO.  The standard is proximate cause, which is more limited than a foreseeability test or "but for" causation.  See Newton v. Tyson Foods, Inc., 207 F.3d 444, 447 (8th Cir. 2000) ("Since but-for causation, or causation in fact, has no logical ending point, the concept of proximate cause cuts off liability for those damages only distantly caused by a defendant's bad acts.").  All of the cases cited in Plaintiffs' Opposition relating to foreseeability are general conspiracy cases – not RICO standing cases.  The issue of foreseeability has no relevance in analyzing whether the non-customers' damages were proximately caused by PNC Bank.[1]  The only pertinent issue is

---

[1] In support of their foreseeability argument, Plaintiffs' Opposition contains a number of bullet points that detail the relationships between the Plaintiffs.  (Pls.' Opp. at 22).  These relationship are not alleged in the Amended Complaint and thus cannot be considered in ruling on a motion

whether the 77 non-customer Plaintiffs suffered a financial loss as a *direct* result of PNC Bank's conduct.[2] Because they do not allege that they received any mail from PNC Bank, or wired funds to or from PNC Bank, the direct cause of their losses must be something other a predicate act committed by PNC Bank.

Second, a RICO conspirator's liability for the acts of its co-conspirators is only relevant when assessing the damages for which a RICO defendant may be liable, not when determining liability. See United States v. Hurley, 63 F.3d 1, 22-23 (1st Cir. 1995) (discussing amount of forfeiture for each member of conspiracy and finding each member of conspiracy liable for only the foreseeable acts of other members). This question of liability for damages bears no relation to the preliminary issue of whether the defendant's conduct was the proximate cause of the alleged damages.[3]

---

to dismiss. Morgan Distrib. Co. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989). Regardless, there are no facts alleged (in the Amended Complaint or in the Opposition) that would indicate that PNC Bank knew, for example, that Sam Currier had a brother-in-law named Jerry Cronkhite who was interested in investing, or that it was otherwise aware of any of the other relationships discussed.

[2] Plaintiffs cite to Bowman v. Western Auto Supply Co., 985 F.2d 383, 388 (8th Cir. 1993), for the proposition that a RICO plaintiff could assert a claim even if it suffered only an indirect injury. (Pls.' Opp. at 21). Bowman said no such thing. The quote that Plaintiffs cite from Bowman is actually a quote from a *different* case, which the Bowman court cites only to question whether the statement remained good law. 985 F.2d at 388. The Court ultimately decided that it need not address the issue. In light of the Supreme Court's holding in Hemi Group that proximate cause under RICO requires a "direct relation between the injury asserted and the injurious conduct alleged," the quote cited by Plaintiffs is likely not good law.

[3] Plaintiffs' Opposition grossly misstates the law on co-conspirator liability. Plaintiffs argue that a RICO defendant is liable for every act committed by a co-conspirator both before and after the defendant joined the conspiracy. (Pls.' Opp. at 25-29). In support of this argument, they cite to cases involving criminal conspiracy brought under statutes other than RICO and misstate what those cases say. For example, Plaintiffs repeatedly state that a RICO conspirator is responsible for all damages caused by the conspiracy for "every moment of the conspiracy's existence." (Pls.' Opp. at 29) (citing Smith v. United States, 133 S. Ct. 714, 719 (2013)). Plaintiffs conveniently omit the following sentence: "Withdrawal terminates the defendant's liability for postwithdrawal acts of his co-conspirators . . . ." Smith, 133 S.Ct. at 719. Likewise, Plaintiffs repeatedly state that a RICO conspirator can only be considered to have withdrawn if it reports

Even taking Plaintiffs' allegations as true, PNC Bank conspired with the alleged RICO conspiracy to commit one act: sending its resignation letter to IRA accountholders. PNC Bank cannot be held liable for the acts of its co-conspirators before it joined the conspiracy, nor can it be held liable after it withdrew. Thus, only those Plaintiffs who actually received the letter could arguably have standing to assert a RICO claim against PNC Bank. The claims of the 77 non-customer Plaintiffs should be dismissed for lack of standing.

### B. The Amended Complaint Fails To Allege The Existence Of An Independent Enterprise.

RICO was not intended to criminalize any criminals who work together simply to perpetrate crimes. United States v. Bledsoe, 674 F.2d 647, 662 (8th Cir. 1982). Thus, RICO requires proof of an "enterprise" that is something more than a group of people created to perpetrate acts of racketeering. Id. at 663. As this Court previously recognized in dismissing a RICO claim alleging a nearly identical associated-in-fact enterprise, the alleged enterprise must have a "structure distinct from the alleged racketeering activities." Rosemann v. Sigillito, 956 F. Supp. 2d 1082, 1096 (E.D. Mo. 2013).

PNC Bank moved to dismiss Plaintiffs' RICO claim because the alleged enterprise would not exist in the absence of the alleged fraudulent acts. (Memo. at 17-18). Unlike a mafia organization or street gang, which have structures aside from the commission of specific illegal acts, Plaintiffs' alleged enterprise existed solely to perpetrate an alleged Ponzi scheme, and courts regularly dismiss RICO claims under such circumstances. See Kottler v. Deutsche Bank.

---

the conspiracy to authorities. (Pls.' Opp. at 24 and n.3). Again, Plaintiffs ignore the second part of the sentence: that a conspirator may withdraw by "making a clean breast to the authorities, *OR* communication of the abandonment in a manner reasonably calculated to reach co-conspirators." U.S. v. Grimmett, 236 F.3d 452, 453 (8th Cir. 2001) (emphasis added). Plaintiffs undeniably allege that PNC Bank told Sigillito that it wanted to have no further relationship with the BLP. (Am. Compl. ¶ 146, 159). In fact, one heading states that Allegiant Bank "terminated its relationship with Sigillito." (Am. Compl. p. 46).

AG, 607 F. Supp. 2d 447, 458 (S.D.N.Y. 2009) ("Plaintiffs fail to allege an enterprise that is separate and distinct from the fraudulent tax shelter scheme allegedly engaged in by the Defendants . . . ."); Vandenbroeck v. Commonpoint Mortg. Co., 22 F. Supp. 2d 677, 684 (W.D. Mich. 1998) ("The entire enterprise alleged by Plaintiffs thus consists of nothing more than the alleged fraudulent acts."); McDonough v. Nat'l Home Ins. Co., 108 F.3d 174, 177 (8th Cir. 1997) (affirming dismissal of RICO claim because the complaint failed to allege a structure distinct from the association needed to defraud the plaintiffs into buying defective land and homes).

Plaintiffs' Opposition attempts to establish a structure based upon the individual businesses of the parties that make up the alleged enterprise. (Pls.' Opp. at 14). However, activities committed in furtherance of individual members' own businesses have no application in deciding whether the *enterprise* has a separate structure. Rosemann, 956 F. Supp. 2d at 1096. See also Able Sec. & Patrol, LLC v. Louisiana, 569 F. Supp. 2d 617, 629 (E.D. La. 2008). Plaintiffs also make the incredible statement that if the "predicate acts are removed, the RICO enterprise is an ***on-going vehicle for legitimately investing IRA money for retirees.***" (Pls.' Opp. at 12) (emphasis original). Yet the Plaintiffs allege that the very purpose of the enterprise was the "operation of the BLP as a Ponzi scheme and fee-generating machine" (Am. Compl. ¶ 346), and they describe the lending program as a "classic Ponzi scheme." (Id. ¶ 6). Plaintiffs thus define the lending program as a fraudulent act – if the predicate acts are removed, there is ***no*** lending program. There is no allegation that a legitimate program somehow lay at the bottom of the BLP or the association of Sigillito, Brown, and the recruiters.

This Court has already determined that a nearly identically defined enterprise did not contain a structure that was separate and apart from the alleged fraud. Rosemann, 956 F. Supp.

2d at 1096. Plaintiffs' Opposition fails to describe why a different result should be reached here. Plaintiffs' RICO conspiracy claim should be dismissed with prejudice.

### C. The Amended Complaint Fails To Allege That PNC Bank Agreed To Assist The Enterprise.

PNC Bank argued in its Memorandum that Plaintiffs failed to allege that PNC Bank agreed to assist the alleged RICO enterprise when the Amended Complaint merely alleged that PNC Bank stopped providing services – it stopped "assisting" the enterprise – as soon as it allegedly learned that the BLP was a fraudulent scheme. (Memo. at 19-21). Plaintiffs' Opposition argues that PNC Bank assisted the alleged enterprise because it allegedly became aware that the BLP was fraudulent but did nothing to alert others to the bank's suspicion. (Pls.' Opp. at 15-17).

As stated in PNC Bank's Memorandum, knowledge of a RICO enterprise's existence is not enough to impose liability as a RICO conspirator; there must also be ***an agreement to assist*** the enterprise. Baumer v. Pachl, 8 F.3d 1341, 1346 (9th Cir. 1993). See also In re Trilegiant Corp., -- F. Supp. 2d --, 2014 WL 1315244, at *20 (D. Conn. Mar. 28, 2014) ("Plaintiffs are attempting to allege, it seems, that mere knowledge of a conspiracy's actions makes the person with that knowledge liable as a co-conspirator. Knowledge alone cannot be enough to subject a person to criminal and civil liability for conspiracy."). In similar cases, courts have held that a RICO defendant's silence despite its alleged knowledge of fraud does not create liability as a RICO conspirator. See Heffernan v. HSBC Bank USA, 2001 WL 803719, at *8 (E.D.N.Y. Mar. 29, 2001) (dismissing claim for RICO conspiracy against bank when plaintiffs alleged that bank learned about fraudulent investment scheme and did nothing to stop it); Bachman v. Bear Stearns & Co., 1997 WL 769554, at *10 (N.D. Ill. Dec. 4, 1997) ("Bear Stearns' action in covering up an alleged conspiracy in 1991 does not show that it agreed to directly assist 'co-schemers' to

defraud Bachman."); Dongelewicz v. PNC Bank Nat'l Ass'n, 104 Fed. Appx. 811, 818 (3rd Cir. 2004) (finding no agreement to assist a RICO enterprise despite plaintiffs' contentions that defendant bank concealed its knowledge about financial status of company in order to deceive investors).

Proof of agreement to assist the enterprise requires allegations that the defendant agreed either (1) to commit at least two predicate acts, or (2) to "adopt the goal of furthering or facilitating the criminal endeavor." Salinas v. United States, 522 U.S. 52, 65 (1997). The Amended Complaint alleges neither. *At most*, Plaintiffs allege that PNC Bank discovered the fraud, sent one letter, withdrew from future participation, and then stayed silent. Withdrawing from the enterprise as soon as its purpose as is discovered cannot be considered an adoption of the enterprise's goal, and keeping silent about one's knowledge is not a predicate act. Mikhlin v. HSBC, 2009 WL 485667, at *6 n. 15 (E.D.N.Y. Feb. 26, 2009).

In essence, Plaintiffs contend that PNC Bank joined the RICO conspiracy at the same time that it withdrew from the conspiracy. This is not enough to subject a defendant to the serious penalties created by RICO. Merely suspecting that a conspiracy exists and not reporting it does not make one liable as a co-conspirator, and disassociating with an alleged RICO enterprise does not equal adoption of the enterprise's goals. Heffernan, 2001 WL 803719, at *8. The Amended Complaint fails to allege that PNC Bank agreed to assist the alleged RICO enterprise, and Plaintiffs' RICO claim should be dismissed accordingly.

**II.     The Court Should Dismiss Plaintiffs' Aiding And Abetting Breach Of Fiduciary Duty Claim (Counts V), Because Missouri Has Not Recognized The Cause Of Action.**

In its Memorandum, PNC Bank established that Plaintiffs' claims for aiding and abetting fraud and for aiding and abetting breach of fiduciary duty should be dismissed because the

Missouri Supreme Court has not recognized the causes of action.[4]  In support, PNC Bank cited to a number of Missouri state and federal courts:

- Bradley v. Ray, 904 S.W.2d 302, 315 (Mo. App. W.D. 1995) (noting that no Missouri court has recognized the tort of aiding and abetting, as set forth in the Restatement (Second) of Torts § 876(b));

- Jo Ann Howard & Assocs., P.C. v. Cassity, 2012 WL 3984486, at *5-11 (E.D. Mo. Sept. 11, 2012) (reviewing authority and concluding that the Missouri Supreme Court would decline to adopt both aiding and abetting fraud and aiding and abetting breach of fiduciary duty theories under the Restatement (Second) of Torts § 876(b)); and

- Omaha Indem. Co. v. Royal Am. Managers, Inc., 755 F. Supp. 1451, 1459 (W.D. Mo. 1991) (denying plaintiffs' motion for summary judgment on claim that corporate officers aided and abetted corporation's breaches of fiduciary duty, because court was not convinced that Missouri courts would recognize such a cause of action)

(Memo. at 4).  Plaintiffs fail to address any of these cases.  (Pls.' Opp. at 30-33).  Instead, Plaintiffs rely heavily on Lerner v. Fleet Bank, N.A., 459 F.3d 273 (2d Cir. 2006) and Lawyers Title Insurance Co. v. United American Bank of Memphis, 21 F. Supp. 2d 785 (W.D. Tenn. 1998).  (Pls.' Opp. at 30-32).  However, Plaintiffs' reliance on these out-of-state cases is completely misplaced for a simple reason:  ***neither case addresses Missouri law on aiding and abetting claims***.  Instead, Lerner applies New York law, and Lawyers Title applies Tennessee law.  See Lerner, 459 F.3d at 292-95; Lawyers Title, 21 F. Supp. 2d at 795-96.  As a result, Lerner and Lawyers Title are irrelevant.

To make matters worse, Plaintiffs misrepresent Missouri law.  Plaintiffs argue that Nickell v. Shanahan, 2013 WL 2402852 (Mo. App. E.D. June 4, 2013) "established that in Missouri, a 'claim for aiding and abetting a breach of fiduciary duties is a recognized cause of action.'" (Pls.' Opp. at 33).  A review of the full history of the Nickell case proves otherwise:

---

[4] Plaintiffs voluntarily dismissed their claim for aiding and abetting fraud (Count IV).  (Pls.' Opp. at 41).

- Trial Court:  The trial court dismissed the plaintiff's claim for breach of fiduciary duty for failure to state a claim.  As a result, the trial court also dismissed the plaintiff's claim for aiding and abetting breach of fiduciary duty, since it was based on the claim for breach of fiduciary duty.  <u>Nickell</u>, 2013 WL 2402852, at *3.

- Court of Appeals:  The Court of Appeals reversed, finding that the plaintiff stated a claim for breach of fiduciary duty as well as for aiding and abetting a breach of fiduciary duty.  <u>Id.</u> at *7.

- Cause Transferred to the Missouri Supreme Court:  On February 4, 2014, the case was transferred to the Missouri Supreme Court.  <u>Id.</u> at *1 (caption).

- Missouri Supreme Court:  The Missouri Supreme *affirmed the trial court's ruling* that had dismissed the breach of fiduciary duty and aiding and abetting claims.  <u>Nickell v. Shanahan</u>, --S.W.3d--, 2014 WL 3819442 (Mo. July 29, 2014).

Plaintiffs' opposition overlooks two key points.  First, when the cause was transferred to the Missouri Supreme Court, the Court of Appeals opinion – the opinion cited repeatedly by Plaintiffs – was vacated and no longer of any precedential value.  See, e.g., <u>Bolden v. State</u>, 423 S.W.3d 803, 808 n.6 (Mo. App. E.D. 2013) ("When the Missouri Supreme Court grants transfer, the decision of the court of appeals is 'necessarily vacated and set aside and may be referred to as *functus officio*,' meaning 'without further authority or legal competence.'") (quoting <u>State v. Norman</u>, 380 S.W.2d 406, 407 (Mo. 1964)).  Second, the Missouri Supreme Court affirmed the trial court's ruling, which had dismissed the plaintiff's aiding and abetting claim.  Thus, Plaintiffs' reliance on the Court of Appeals' decision in <u>Nickell</u> – which has been vacated and is without any further authority – is both misplaced and improper.

Finally, Plaintiffs also improperly rely on <u>Shelter Mutual Insurance Co. v. White</u>, 930 S.W.2d 1 (Mo. App. W.D. 1996) and <u>Safe Auto Insurance Co. v. Hazelwood</u>, 404 S.W.3d 360 (Mo. App. S.D. 2013).  (Pls.' Opp. at 33).  Both of these cases addressed the narrow issue of to what extent a person can be liable for encouraging another person to drink and drive.  See <u>Shelter</u>, 930 S.W.2d at 3; <u>Safe Auto</u>, 404 S.W.3d at 366-67 (relying on <u>Shelter</u>).  As a result, it is

questionable whether the Shelter decision "applies outside the drunk driving context." Joseph v. Marriott Int'l, Inc., 967 S.W.2d 624, 630 (Mo. App. W.D. 1998).

Moreover, in Jo Ann Howard & Assocs., the court, after providing a comprehensive review of Missouri law, *including the Shelter decision*, concluded that the Missouri Supreme Court would decline to adopt an aiding and abetting breach of fiduciary duty cause of action. 2012 WL 3984486 at *5-11.  Thus, the Court should dismiss the Plaintiffs' aiding and abetting breach of fiduciary duty claim with prejudice.

**III.    The Court Should Dismiss Plaintiffs' Breach Of Fiduciary Duty Claim (Count VI), Because They Did Not, And Cannot, Allege Facts Supporting The Existence Of A Fiduciary Relationship.**

In its Memorandum, PNC Bank established that the Plaintiffs' breach of fiduciary duty claim should be dismissed because Plaintiffs did not, and cannot, allege the existence of a fiduciary relationship between Plaintiffs and PNC Bank.  In support, PNC Bank cited specific cases establishing that:  (A) absent special circumstances, there is no fiduciary relationship between a bank and its custodial or depository customers; and (B) Plaintiffs failed to allege the existence of any special circumstances because they have not alleged facts showing, among other things, (1) a surrender of independence by the subservient party to the dominant party, and (2) an automatic or habitual manipulation of the actions of the subservient party by the dominant party. (Memo. at 7-8).

Plaintiffs' Opposition confirms that their breach of fiduciary duty claim should be dismissed.  First, Plaintiffs' Opposition completely fails to address how the 77 Plaintiffs who were never customers of PNC Bank somehow have a fiduciary relationship with the bank. (Memo. at 5-6).  They have no argument against dismissal of the claims brought by these 77 non-customer Plaintiffs.

Second, Plaintiffs' Opposition points to no factual allegations that support the existence of a fiduciary relationship between PNC Bank and the 14 Plaintiffs who were customers of the bank. Instead, Plaintiffs argue that a bank's "superior knowledge" is enough on its own to create a fiduciary duty. (Pls.' Opp. at 34-35). They never address the multitude of *Missouri* cases cited by PNC Bank holding that a bank has no fiduciary duty to its depository customers, nor does it have a duty by virtue of "superior knowledge" alone. (Memo. at 7-8).

Alternatively, Plaintiffs contend that PNC Bank's fiduciary duty arose "from the fact that the IOLTA account is a trust account." (Pls.' Opp. at 35-36). Plaintiffs do not allege that they held IOLTA accounts with PNC Bank; they allege that Sigillito did. Plaintiffs cite to no law creating a fiduciary duty to every person who sent money to an IOLTA account held by a bank. Plaintiffs are required to plead some facts that establish the existence of a fiduciary duty, and they have simply failed to do so. See Gibson v. Brewer, 952 S.W.2d 239, 245 (Mo. 1997) (affirming dismissal of breach of fiduciary duty claim where plaintiffs relied on conclusory allegation that the Diocese "held a fiduciary relationship of trust and confidence").

Plaintiffs' reliance on Lerner v. Fleet Bank, N.A., 459 F.3d 273 (2d Cir. 2006) (Pls.' Opp. at 33-35) is equally misplaced. Contrary to Plaintiffs' intimation, the court did not hold that the bank owed a fiduciary duty. In fact, the Second Circuit affirmed the district court's dismissal of plaintiffs' breach of fiduciary duty claim. Id. at 283 and 296.

Thus, the Court should dismiss the Plaintiffs' breach of fiduciary duty claim with prejudice, because the law does not impose a fiduciary relationship in these circumstances.

**IV. The Court Should Dismiss Plaintiffs' Conspiracy To Breach Fiduciary Duties Claim (Count VII), Because PNC Bank Owed No Fiduciary Duties, And There Was No Meeting Of The Minds To Breach Sigillito's Duties.**

Plaintiffs alleged in the Amended Complaint that the basis of their Conspiracy to Breach Fiduciary Duties claim was their contention that "PNC Bank, as the successor in interest to

Allegiant Bank, conspired to breach *its* fiduciary duty . . . ." (Am. Compl. ¶ 325). In accordance with the arguments made in the prior section, PNC Bank argued in its Memorandum that Plaintiffs' claim for Conspiracy to Breach Fiduciary Duties should be dismissed because Plaintiffs failed to allege the existence of any fiduciary duty owed by PNC Bank to Plaintiffs. (Memo. at 9).

Plaintiffs' Opposition appears to adopt an entirely different theory. At no point does the Opposition refer to the fiduciary duties owed by PNC Bank. Instead, the Opposition refers to *Sigillito's* fiduciary duty. (Pls.' Opp. at 37). This is a fundamental change of the allegations in the Amended Complaint and thus should not be considered. Nonetheless, the Amended Complaint fails to allege that PNC Bank conspired to breach any fiduciary duties owed by Sigillito because the Amended Complaint does not include any allegation that PNC Bank and Sigillito, *after a meeting of the minds*, agreed to commit some unlawful act. This omission is fatal to their new and revised conspiracy claim.

Gibson is directly on point. In Gibson, the Missouri Supreme Court emphasized that "[a] plaintiff must establish that two or more persons with an unlawful objective, after a meeting of the minds, committed at least one act in furtherance of the conspiracy, damaging the plaintiff." 952 S.W.2d at 245. Applying this standard, the court held that the trial court properly dismissed plaintiff's conspiracy claim because allegations that "the Diocese . . . knew or should have known that Brewer was committing sexual misconduct and failed to take any action to prevent it or warn them," did not support the inference of a "meeting of the minds." Id. at 245.

The analogous circumstances in this case compel the same conclusion. Plaintiffs' unsupported assertion that PNC Bank knew of Sigiilito's fiduciary breaches is insufficient on its

SLC-7337855-1                                   13

own to support a claim for conspiracy as a matter of law. Thus, the Court should dismiss the Plaintiffs' conspiracy claim with prejudice.

## V. The Court Should Dismiss the Plaintiffs' Negligence Claim (Count VIII), Because Any Duty Owed is Defined by Contract.

As with Plaintiffs' claim for breach of fiduciary duty, PNC Bank argued in its Memorandum that Plaintiffs' negligence claim should be dismissed for failing to allege any duty owed by PNC Bank to Plaintiffs. And, as with the fiduciary duty claim, Plaintiffs' Opposition completely fails to point the Court to any allegations that support the existence of a duty.

First and foremost, Plaintiffs do not address PNC Bank's argument that it cannot owe any duty to the 77 Plaintiffs who were never customers of PNC Bank. (Memo. at 10). Even Plaintiffs' favorite case, Lerner, dismissed the negligence claims of non-customers because "banks do not owe non-customers a duty to protect them from the intentional torts of their customers." 459 F.3d at 286.

Plaintiffs also fail to address PNC Bank's argument – and the cases cited in support of it – that a bank owes no common-law duties to its customers outside of its contracts. (Memo. at 10-13). Plaintiffs' Opposition makes no reference to this argument, distinguishes none of the cases, and does nothing to rebut the legal authority presented. Standing alone, these omissions are fatal to Plaintiffs' negligence claim.

Instead, Plaintiffs rely entirely on Lerner (Pls.' Opp. at 39-40), but their reliance is misplaced. In Lerner, the plaintiffs did not allege a contractual relationship, as Plaintiffs do here. (Am. Compl. ¶ 148). As a result, the Lerner court (applying New York law) never addressed the question presented in PNC Bank's Motion to Dismiss: whether a plaintiff can bring a negligence claim against a bank where the contract sets forth the duties owed by the bank? As set forth in PNC Bank's Memorandum, under Missouri law, for the 14 Plaintiffs who were alleged to have

been PNC Bank customers, their contract sets forth the only duties PNC Bank owed, and PNC Bank can have no common-law negligence liability for economic losses arising from a contractual relationship.  See, e.g., Autry Morlan Chevrolet, Cadillac, Inc. v. RFJ Agencies, Inc., 332 S.W.3d 184, 192 (Mo. App. S.D. 2010).  See also Graham Constr. Servs., Inc. v. Hammer & Steel Inc., 755 F.3d 611, 616-17 (8th Cir. 2014) (discussing authority and stating that Missouri law bars recovery in tort for economic loss arising from contractual relationship).  Thus, the Court should dismiss the Plaintiffs' negligence claim with prejudice.

## CONCLUSION

For these reasons, PNC Bank, N.A. respectfully requests that the Court dismiss Counts IV-IX of the First Amended Complaint with prejudice.

Dated:  October 2, 2014.                    Respectfully submitted,


By:   s/Randal K. Mullendore

Joseph P. Conran, E.D. Mo. #21635MO
Randal K. Mullendore, E.D. Mo. #40889MO
Catherine A. Lewandowski, E.D. Mo. #61112MO
Elizabeth A. Bozicevic, E.D. Mo. #59623MO
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Main: 314.480.1500
Fax: 314.480.1505

***Attorneys for PNC Bank, N.A.***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this 2nd day of October, 2014, via the court's electronic filing system, to:

Jonathan F. Andres
GREEN JACOBSON, P.C.
7733 Forsyth Blvd., Suite 700
St. Louis, MO 63105

Sebastian Rucci
LAW OFFICE OF SEBASTIAN RUCCI
401 E. Ocean Blvd., Suite 1240
Long Beach, CA 90802

                                                ___s/Randal K. Mullendore_____