**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD AGUILAR, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No. 4:14-cv-00985-LRR |
| | ) | |
| PNC BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

Defendant PNC Bank, N.A. ("PNC") moves for an order under Federal Rule of Civil Procedure 26(c) to protect it from abusive discovery. Plaintiffs seek to force PNC to educate and produce a witness to provide detailed testimony about 260 different topics relating to 14-year old events in which PNC was never involved (but that instead involved a predecessor entity twice removed from PNC). The scope and detail of the notice are excessive on its face, and PNC should be protected on that ground alone, but the Court should also protect PNC from this burdensome discovery because it serves no purpose. There is no PNC employee who has knowledge of these topics, nor are there any business records of PNC that relate to these events.[1] In order to produce a witness on these issues, PNC would need to do the very same thing that Plaintiffs are doing: review and interpret the discovery to date in this action. Plaintiffs already have had or will shortly have the opportunity to pose their questions to every individual named in the documents as being involved in these events; there is no reason to compel PNC to designate

---

[1] By virtue of several corporate transactions, PNC acquired possession of certain Allegiant Bank records relating to Plaintiffs' claims (which PNC produced to Plaintiffs), but no PNC employee has any information about the documents, beyond what they say on their face.

1

an individual with no relevant personal knowledge to study the discovery record and answer the same questions.

The notice also contains a number of topics relating to communications between Allegiant Bank and its attorneys. Such information is plainly protected by the attorney-client privilege or work product doctrine.

PNC attempted to confer with Plaintiffs in good faith regarding these problems and articulated the deficiencies to Plaintiffs in detail. Plaintiffs, uncompromising, proceeded by expanding the scope of the deposition even further through amended notices. PNC has no alternative but to seek relief from this Court.

## **BACKGROUND**

Plaintiffs' 260-topic Rule 30(b)(6) notice is the latest escalation of Plaintiffs' discovery practices. After Plaintiffs served their written discovery requests, they pursued the depositions of five former Allegiant Bank officers. None of the former Allegiant Bank officers supported Plaintiffs' theory that Allegiant had discovered and covered up Martin Sigillito's fraud in 2001, so Plaintiffs invented a theory that the records of Allegiant's law firm, Thompson Coburn, would show that one of Missouri's largest and oldest firms was notified by Allegiant Bank of the fraud and actively conspired with Allegiant Bank to cover it up. Plaintiffs thereafter moved to strip the attorney-client privilege from communications between Allegiant Thompson Coburn. Then on June 2, Plaintiffs served PNC with their initial Notice of Videotaped Rule 30(b)(6) Deposition (attached hereto as Exhibit A), scheduling the deposition at issue here (on 195 topics and subtopics listed in 25 single-spaced pages) for June 19. On June 10, Plaintiffs purported to supplement the notice (attached as Exhibit B), which expanded to 31 single-spaced pages, detailing approximately 225 topics and subtopics. Two days later (only seven days before the

noticed deposition), Plaintiffs added still more topics, bringing the final notice (attached as Exhibit C) to a whopping 39 single-spaced pages detailing more than 260 topics and subtopics.

These notices purport to seek information about events in which no PNC employee was involved. PNC has no firsthand information on any of these topics, and would have to examine and interpret documents it did not author (that have been provided to Plaintiffs) and review the same depositions of former Allegiant employees that Plaintiffs took in order to try to piece together responses. As to some of the subjects, PNC is unaware of any witnesses who have memories and no documents appear to exist.

The bulk of the topics are those on which PNC has no knowledge and about which Plaintiffs have already questioned former Allegiant officers, who answered Plaintiffs' questions to the extent that they could. Specifically, Plaintiffs seek:

- information concerning the transaction history and activity within Martin Sigillito's Allegiant Bank accounts throughout the year 2001 that was within the "knowledge," "possession," or "control" of Allegiant Bank at any given moment in time that year. Topic 1(r), (s), (t), (u), (v), (w), (x), 2(a), 3(a), 6(g), (h), (i), (j), 7(*l*), (m), (n), 9, 10, 12, 17(c), (d), (e), (f), (h), (i), (j), (k), 20(a)(1)-(4), (b)(1)-(4), (c)(1)-(4), (d)(1)-(4);
- Allegiant Bank's "understanding in 2001" about the "nature," "function," "purpose," and "role" of IOLTAs, trust accounts, and attorneys, as well as its "understanding in 2001" of Missouri Lawyer Trust Account Foundation guidelines and Lawyer Trust Account Handbook for IOLTA accounts. Topics 11(a), (b), (c), (e);
- Information regarding the details of individual meetings attended by former Allegiant Bank employees. *See* Topic 1(p), 6(b).

- Allegiant Bank's process of drafting certain letters identified in Plaintiffs' Amended Complaint. Topics 6(a), 7(b), (c), (d), (e), (f), 17(g);

- Information about events referenced in Allegiant Bank Trust Committee Minutes, which were attended solely by Allegiant Bank employees. *See* Topic 32 [sic].

- Details of any purported Allegiant Bank "examin[ation]," "investigation," or "inquiry" conducted by Allegiant Bank employees in 2001 into Sigillito's accounts. Topics 1(y), (z), 2(a), (d), 3(a), (b), 19(a), (b), (c), (d), (e), (f), (h), (i), (j)(1)-(9), (k), (l), (m), (n), (o), (p);

- Details and reasons why Allegiant Bank decided to resign as custodian of the relevant IRAs. Topics 6(d), (e), (f), 7(b), (g), (h), (i), (j), (k));

- Details and reasons why Allegiant Bank decided to transfer the Sigillito-related IRAs to Millennium Trust. Topics 16, 17(a), (b), (g);

- numerous Allegiant Bank-era documents which neither PNC nor any of its current employees created or filled out. *See* Topics 13, 24(a)(1)-(5), 24(b)(1)-(4), 24(c)(1)-(10), 24(d)(1)-(19), 24(e)(1)-(5), 24(f)(1)-(3), 25(a)-(e), 26(a)-(e), 27(a)-(e), 28(a)-(e), 29(a)-(e), 30(a)-(e).

Nearly all of these topics have been the subject of extensive questioning directed to former Allegiant employees.

The remaining improper topics, on their face, concern privileged communications between Allegiant Bank and its attorneys. *See* Topics 1 (h), (o), (q), 2(a), (d), 3(a), (b), 4, 5, 6, 7, 19(j)(2). These topics and subtopics include: (1) PNC's "knowledge" and "investigation in 2001 of any of the facts contained in the 22 page fax from Richard Markow to [Allegiant's outside counsel] Jan Alonzo on or about October 9, 2001 identified in Thompson Coburn's privilege

4

log…." (Topics 1(o), (q)); (2) privileged documents identified in Thompson Coburn's privilege log, as well as Allegiant Bank's communications with Thompson Coburn (Topics 4, 5); (3) details of Allegiant Bank's counsel's purported investigation into Martin Sigillito in 2001 (Topic 2(c), (d)); and (4) Allegiant's drafting of a letter with attorney assistance (Topics 6(a), 7(b), (f)). Some of these topics explicitly refer to the pending motion to compel documents and testimony from the Thompson Coburn law firm and its former partner, Ms. Alonzo, and demand that a witness to testify concerning "any documents the Court may order Thompson Coburn to produce" and the scope of any "communications between You and Thompson Coburn disclosed pursuant to the Court's order" (Topics 4, 5). The scope of these topics cannot be known until after the Court has ruled on the pending motion.

## DISCUSSION

I.  **The Scope, Detail and Timing of Plaintiffs' Rule 30(b)(6) Notice Is Overbroad, Unduly Burdensome, and Abusive.**

Plaintiffs maintain that because Rule 30(b)(6) allows for the deposition of a corporate representative, defendant must supply a witness on every conceivable topic in this case and that witness must testify regarding the granular details demanded by their 39-page, single-spaced deposition notice. The protections afforded by Rule 26(c) against abusive discovery and the practical realities of a witness can testify about, however, do not evaporate in the face of Rule 30(b)(6). Rule 26(c) authorizes a court for "good cause shown" to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense," including depositions of corporate representatives. "'Because of liberal discovery and the potential for abuse, the federal rules confer[] broad discretion on the [district] court to decide when a protective order is appropriate and what degree of protection is required.'" *Monsanto Co. v. Pioneer Hi-Bred Int'l, Inc.*, No. 4:12-CV-1090 (CEJ), 2014 WL 1211111, *1 (E.D. Mo. Mar. 24, 2014) (quoting *Misc.*

5

*Dkt. Matter No. 1 v. Misc. Dkt. Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999)). Good cause exists here because a PNC witness would have nothing to add to the discovery record on these topics and the burden of preparing a witness on hundreds of topics about which PNC has no firsthand knowledge is apparent.

The purpose of Rule 30(b)(6) is "to require an organization to identify and designate a witness who is knowledgeable on the noticed topic, particularly where the noticing party is unable to itself identify an appropriate witness because that knowledge lies within the organization…." *Apple Inc. v. Samsung Electronics Co., Ltd.*, No. C 11-1846 LHK (PSG), 2012 WL 1511901, *2 (N.D. Cal. Jan. 27, 2012). Such a notice is appropriate at the outset of litigation where, for example, a party may be unaware of the corporate organization, the identities of relevant employees or the information systems used to store information. The purpose of the Rule, however, "does not extend to burdening the responding party with production and preparation of a witness on every facet of the litigation." *Id.* Indeed, "as the number and breadth of the noticed subject areas expand," a party's task of adequately preparing its designee "becomes less realistic and increasingly impossible…." *Id.*; *see also F.D.I.C. v. Wachovia Ins. Servs., Inc.*, No. 3:05 CV 929(CFD), 2007 WL 2460685, *3 (D. Conn. Aug. 27, 2007) ("[A]s the scope of the subject matters to be explored at deposition becomes broader the difficulty and burdensomeness of the contemplated discovery increases."). Courts recognize that the theoretical scope of Rule 30(b)(6) is limited by the practical realities and a fair balancing of litigation burdens.

*Apple* concerned patent infringement claims and counterclaims related to the competing Apple and Samsung smartphone products. Samsung served a Rule 30(b)(6) notice containing 229 topics for examination. Apple moved for a protective order on the ground that the notice

was so egregiously overbroad as to be harassing and oppressive. It noted that the number of topics and subparts defied any attempt by Apple to identify and meaningfully prepare witnesses. The court agreed and recognized the realistic limits of what can be expected. The court noted that a party must make a conscientious, good-faith effort to designate knowledgeable persons and to prepare them fully and unevasively to answer questions about the designated subject matters. The sheer scope of the notice made compliance with the obligation impractical. The court determined that the notice was "facially excessive" and entered a protective order as to the entire notice. *Id*. at *3. Considering the breadth of the notice, the court concluded that the deponent should not have to pick and choose which topics would merit preparation and a response. *Id.* at *3.

Likewise, in *Wachovia*, the court was confronted with a Rule 30(b)(6) notice that contained twenty-seven topics and eleven categories of documents in litigation concerning insurance coverage for a bank that had been acquired by failed bank that was taken over by FDIC. The court acknowledged that FDIC's lack of pre-failure involvement would not change the scope of permissible discovery but that fact could not be ignored when assessing the reasonableness of the burdens being imposed. Factors to be considered are the breadth of the notice and the time and effort required to "educate" a witness who otherwise knows nothing about the matters at issue. 2007 WL 2460685, at *2.

The district courts in *Apple* and *Wachovia* are hardly alone in recognizing the practical limits of discovery through a Rule 30(b)(6) deposition. *See, e.g.*, *Barron v. Caterpillar, Inc.*, 168 F.R.D. 175, 177 (E.D. Pa. 1996) (denying motion to compel) ("The Court agrees with Cat's position. Because this litigation involves a piece of equipment that Cat designed and manufactured roughly twenty five years ago, both parties should anticipate the unavailability of

7

certain information concerning the machine…. [B]oth parties should expect that the inescapable and unstoppable forces of time have erased items from [the witness's] memory which neither party can retrieve."); *see also Walden v. City of Chicago*, No. 04 C 47, 2007 WL 328883, *3 (N.D. Ill. Feb. 1, 2007) ("The long and the short of it is, the City cannot designate a 30(b)(6) witness because it does not have a knowledgeable employee nor is there any information reasonably available to the City from which it could create a knowledgeable 30(b)(6) witness. Too much time has passed and records have been discarded. This is unfortunate for the plaintiff. However, due to the passage of time and the fact that the pertinent records no longer exist, this Court finds that it is not appropriate or just to sanction the City pursuant to Rule 37 for its inability to produce a Rule 30(b)(6) witness.").

The teaching of these cases applies with full force here. Plaintiffs have served an initial and two amended notices in the last 10 days with an ever-expanding list of topics. Merely keeping up with the notice topics, much less, preparing a witness to testify, is daunting. In the words of the *Apple* court, the notice is plainly "facially excessive." These burdens are amplified by the fact that PNC has no employees with personal knowledge of the extensive topics contained in the notice. The practical ability to present a corporate representative on this universe of topics has crossed beyond burdensome and difficult into the impossible. Plaintiffs' Rule 30(b)(6) notice is a textbook example of abusing Rule 30(b)(6).

II. **Plaintiffs Cannot Show Prejudice Because They Have Already Obtained Discovery Through Alternative, Less Burdensome Means.**

In contrast to the burdens imposed on PNC by Plaintiffs' broad-ranging notice, the granting of a protective order creates no prejudice to Plaintiffs because there are other available means of discovery that can and have been used to obtain information. Rule 30(b)(6) requires organizations to designate persons to testify "about information *known or reasonably available*

8

to the organization," and the rule "does not preclude a deposition by any other procedure allowed" by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 30(b)(6)(emphasis supplied). The Rule is subject to the protections of Rule 26(b)(2)(C), which provides that discovery shall be limited where it is available through other, less burdensome means:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C).

In granting a protective order, the district court in *Wachovia* acknowledged these considerations. The court quashed the plaintiff's Rule 30(b)(6) notice in light of the availability of documents produced by FDIC, the depositions of numerous witnesses with first-hand knowledge, and the lack of any remaining employees with such knowledge. 2007 WL 2460685, at *3-4.

The same considerations apply here. PNC has produced the existing documents concerning the handful of Plaintiffs who had self-directed IRA accounts, trust accounts or loans at Allegiant Bank, minutes of trust committee meetings regarding those accounts, records of Martin Sigillito's trust account and loans and other surviving relevant documents from Allegiant Bank's operations from years ago. Plaintiffs have deposed five former Allegiant Bank officers at length on the matters at issue and have noticed the deposition of another, and there are no current PNC employees with personal knowledge of on the topics set forth in the deposition notice. While it is true that the former Allegiant Bank employees have limited recollection of events from fourteen or more years ago, putting a current PNC employee up for deposition under Rule

9

30(b)(6) will not create memories that do not exist. No reasonable purpose under the Federal Rules would be served by having a PNC employee with no first-hand information testify on these same matters.

### III.     Plaintiffs Improperly Seek Information Protected by the Attorney-Client Privilege.

Finally, those topics seeking testimony about privileged information are plainly improper. The protection of privileged information is a well-recognized ground for a protective order. *See, e.g.*, *Medical Protective Co. v. Bubenik*, No. 4:06CV01639 ERW, 2008 WL 2132100 (E.D. Mo. May 20, 2008); *Foseco, Inc. v. Consolidated Aluminum Corp.*, No. 88-85C(2), 1989 WL 138663 (E.D. Mo. Apr. 13, 1989).

Numerous topics in Plaintiffs' deposition notice call for clearly privileged communications between Allegiant Bank employees and the Thompson Coburn law firm and its former partner, Ms. Alonzo. A protective order is warranted where such clearly privileged information is being demanded.

## CONCLUSION

PNC respectfully requests the Court find that the scope of Plaintiffs' Rule 30(b)(6) deposition notice and the two subsequent supplemental notices is excessive and unreasonable, that alternative and less burdensome means of discovery are available and, for those reasons, issue its order quashing the deposition notice pursuant to Rule 26(c), Fed. R. Civ. P.

Dated: June 18, 2015	Respectfully submitted,

BRYAN CAVE LLP

<u>/s/ Herbert R. Giorgio, Jr.</u>
Jeffrey J. Kalinowski, EDMO #29926MO
Jeffrey S. Russell, EDMO #35158MO
Herbert R. Giorgio, Jr., EDMO #58524MO
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102-2750
Phone: (314) 259-2000
Fax: (314) 259-2020

Attorneys for Defendant
PNC Bank, N.A.

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and accurate copy of the foregoing was filed electronically this 18th day of June, 2015 and served on all counsel of record via operation of the Court's electronic filing system.

                                          /s/ Herbert R. Giorgio, Jr.