**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD AGUILAR, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 4:14-cv-985-LRR |
| vs. | ) | |
| | ) | Judge: Honorable Linda R. Reade |
| PNC BANK, N.A., | ) | (Chief Judge N. Dist. Iowa) |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFFS' FOURTH SUPPLEMENTAL NOTICE OF VIDEOTAPED RULE 30(b)(6) DEPOSITION OF PNC BANK, N.A.

TO: ALL COUNSEL OF RECORD

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs will take the deposition by video and oral examination of *PNC Bank, N.A.*, commencing *on Friday, June 26, 2015*, at 9:00 am (CDT), at the offices of Jonathan F. Andres, P.C. at 7733 Forsyth Boulevard, Suite 700, Clayton, Missouri 63105.

Said deposition will be taken before an official court reporter and notary public in accordance with Rules 28 and 30 of the Federal Rules of Civil Procedure and will be recorded by video and stenography. The deposition is being taken for the purpose of discovery, for use at trial, and for such other purpose as permitted under the Federal Rules of Civil Procedure.

PLEASE BE FURTHER ADVISED that pursuant to Federal Rule of Civil Procedure 30(b)(6), "in its notice or subpoena, a party may name as the deponent a . . . corporation . . . and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify.

1

Exhibit D

. . . This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules." Fed. Rule. Civ. P. 30(b)(6).  Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure plaintiffs seek testimony on behalf of PNC on the following matters known or reasonably available to PNC:

### DEFINITIONS

(A).   As used herein, the terms "*PNC*", "*You*" and "*Your*" refer to defendant PNC Bank, N.A., its predecessors in interest Allegiant Bank, Pioneer Bank, and National City Bank, and any of their current or former agents, attorneys, beneficiaries and representatives, employees, subsidiaries, and/or persons acting or purporting to act on its behalf.

(B).   As used herein, the term "*Trust Department*" shall mean that area of your business commonly known as Allegiant Trust and for which, for example, Richard Markow, and then Matthew Finn, served as president.

(C).   As used herein, the terms "*British Lending Program*" or "*BLP*" refer to the loan program in which Plaintiffs loaned money to John Laurence Mark, John Bede Morse and John George Gibson or Mark Gilbert Morse, Solicitors, or Derek Smith and Distinctive Properties (UK) Limited or Princess Hotels Management Limited.

(D).   As used herein the terms "*Communication*" and "*Communications*" refer to both oral and written communications and means all conversations, inquiries, presentations, discussions, negotiations, agreements, understandings, speeches, meetings, telephone calls, letters, notes, advertisements, brochures, memoranda, social media posts, e-mails, documents, writings, and all other means by which information, data, language, or documents are transmitted, passed, or otherwise conveyed from one or more persons or entities to one or more other persons or entities.

(E).   As used herein, the term "*Thompson Coburn*" refers to Thompson Coburn, LLP, its current or former agents, attorneys, beneficiaries and representatives, employees, officers, and/or persons acting or purporting to act on its behalf.

(F).    As used herein, the terms "***Loan Agreement***" or "***Loan Agreements***" refer to a document or documents entitled "Loan Agreement" related to the loan program commonly known as the to the "***British Lending Program***" in which Plaintiffs loaned money to John Bede Morse, John George Gilbon, and John Laurence Mark, or to Derek Smith, Distinctive Properties (UK) Limited and/or Princess Hotels Management Limited.

(G).    As used herein, the term "***Millennium***" refers to Millennium Trust Co., its current or former agents, attorneys, beneficiaries and representatives, employees, subsidiaries, and/or persons acting or purporting to act on its behalf.

(H).    As used herein, the term "***Sigillito***" refers to and includes Defendant Martin T. Sigillito and Martin T. Sigillito & Associates, Ltd., and its current or former agents, attorneys, beneficiaries, representatives, employees, subsidiaries, and/or persons that You believed were acting or purporting to act on its behalf including, but not limited to, Elizabeth Stajduhar-Perigen.

## TESTIFY REGARDING THE FOLLOWING TOPICS/MATTERS

1.    Your produced a copy of documents from Betty Womack's IRA account no. 69009513339 bearing Bates numbers D-Aguilar.3262 to D-Aguilar.3362.

You have agreed to stipulate and have stipulated that PNC Bank, N.A. is successor in interest to Allegiant Bank, Pioneer Bank, and National City Bank.

With respect to the foregoing, please designate a representative to testify on Your behalf concerning the following topics:

a.    The purpose of Your wire transfer to J. Scott Brown Associates of $56,715.19 as shown in D-Aguilar.3273;

b.    The call from Martin Sigillito referenced, and Your response to his inquiry as described, in D-Aguilar.3298;

c.    Your receipt of check no. 561 from Martin Sigillito payable to Allegiant Trust Co. for $56,715.19, D-Aguilar.3356, and understanding of the check's purpose and reasons why the check was made payable to Allegiant Trust Co.;

3

d.    The source of the funds available and used to pay check no. 561, D-Aguilar.3356;

e.    The liquidation and source of the proceeds received from liquidation of the asset described in D-Aguilar.3361 and D-Aguilar.3267;

f.    The facts and circumstances of any inquiry or investigation You conducted as a result of, or relating to, Your receipt of check no. 561, D-Aguilar.3356;

g.    The facts and circumstances of any inquiry or investigation You conducted of activity in Sigillito's accounts during October 2001 and prior to giving the proceeds of $56,715.19 to Betty Womack on or about October 19, 2001 as shown in D-Aguilar.3367;

h.    The knowledge and understanding You had concerning the borrower, Mark Morse Gibson's ability to repay the loan referenced in D-Aguilar.3267 when proceeds of $56,715.19 were received from liquidation of the asset as shown in D-Aguilar.3367;

i.    The knowledge and understanding You had concerning fees that Martin Sigillito and his associates were deducting from loans made by investors in the BLP including, but not limited to, fees of 32% discussed in Matthew Finn's Declaration (docket no. 52-9) when proceeds of $56,715.19 were received from liquidation of the asset as shown in D-Aguilar.3367; and

j.    The knowledge and understanding You had concerning the facts and events described in Matthew Finn's Declaration (docket no. 52-9) and Affidavit (docket no. 67-5) when proceeds of $56,715.19 were received from liquidation of the asset as shown in D-Aguilar.3367.

2.    Your First Amended Answer, Affirmative Defenses, and Counterclaim to Plaintiffs' First Amended Complaint (docket no. 77) filed June 18, 2015 at paragraph 23 of Your affirmative defenses states, in part, "PNC did not act in bad faith or have actual or constructive knowledge of Sigillito's fraudulent scheme."

You have agreed to stipulate and have stipulated that PNC Bank, N.A. is successor in interest to Allegiant Bank, Pioneer Bank, and National City Bank.

4

With respect to the foregoing, please designate a representative to testify on Your behalf concerning the following topics:

a.   Your understanding of "Sigillito's fraudulent scheme" as that term is used in paragraph 25 of the affirmative defenses in Your First Amended Answer, Affirmative Defenses, and Counterclaim to Plaintiffs' First Amended Complaint (docket no. 77) filed June 18, 2015 at the time You filed it with the Court;

b.   Your understanding and the meaning of the term "bad faith" as used in paragraph 23 of the affirmative defenses in Your First Amended Answer, Affirmative Defenses, and Counterclaim to Plaintiffs' First Amended Complaint (docket no. 77) filed June 18, 2015;

c.   Your understanding and the meaning of the term "actual" knowledge as used in the phrase "actual or constructive knowledge of Sigillito's fraudulent scheme" in paragraph 23 of the affirmative defenses in Your First Amended Answer, Affirmative Defenses, and Counterclaim to Plaintiffs' First Amended Complaint (docket no. 77) filed June 18, 2015;

d.   Your understanding and the meaning of the term "constructive knowledge" as used in the phrase "constructive knowledge of Sigillito's fraudulent scheme" in paragraph 23 of the affirmative defenses in Your First Amended Answer, Affirmative Defenses, and Counterclaim to Plaintiffs' First Amended Complaint (docket no. 77) filed June 18, 2015;

e.   Your factual and evidentiary basis for Your statement at paragrph 23 of Your affirmative defenses in Your First Amended Answer, Affirmative Defenses, and Counterclaim to Plaintiffs' First Amended Complaint (docket no. 77) filed June 18, 2015 that "PNC did not act in bad faith or have actual or constructive knowledge of Sigillito's fraudulent scheme."

3.   Your First Amended Answer, Affirmative Defenses, and Counterclaim to Plaintiffs' First Amended Complaint (docket no. 77) filed June 18, 2015 at paragraph 25 of Your affirmative defenses states, in part, "PNC did not deliberately avoid knowledge of Sigillito's fraudulent scheme."

You have agreed to stipulate and have stipulated that PNC Bank, N.A. is successor in interest to Allegiant Bank, Pioneer Bank, and National City Bank.

With respect to the foregoing, please designate a representative to testify on Your behalf concerning the following topics:

a.    Your factual and evidentiary basis for Your statement at paragrph 23 of Your affirmative defenses in Your First Amended Answer, Affirmative Defenses, and Counterclaim to Plaintiffs' First Amended Complaint (docket no. 77) filed June 18, 2015 that "PNC did not deliberately avoid knowledge of Sigillito's fraudulent scheme."

4.    The identity of the account holder and account activity in Sigillito's IOLTA account no. 0404007101 shown in Exhibits 11, 17, 22, 35, 44, and 47 attached hereto.

5.    With respect to IOLTA account no. 0404007101, please designate a representative to testify on Your behalf concerning the following topics:

a.    Your understanding in 2001 of the nature and function of IOLTA accounts generally and IOLTA account no. 0404007101;

b.    Your understanding in 2001 of the function and purpose of trust accounts generally;

c.    Your understanding in 2001 of an attorney's function and role with respect to an IOLTA account generally;

d.    The facts and circumstances of Your qualifications and authorization possessed in 2001 to offer IOLTA accounts in Missouri; and

e.    Your understanding in 2001 of the Missouri Lawyer Trust Account Foundation guidelines and Lawyer Trust Account Handbook for IOLTA accounts.

6.    The account holder and activity in Sigillito's Attorney at Law Account no. 0404007544 shown in Exhibits LA1 through LA5 attached hereto.

7.    The identity of the borrower, and Your receipt and acceptance of payments, for Loan No. 364099 shown in Exhibit H-18 (docket no. 52-8 at page 68 of 76 to page 76 of 76) and Exhibit 125 attached hereto.

8.    Martin Sigillito maintained attorney trust accounts at Allegiant Bank from January 2000 to December 2001, at Pioneer Bank from January 2002 to May 2006, and at National City Bank from May 2006 to August 2006.

In May 2004, National City Bank purchased Allegiant Bank and over half of Allegiant's employees remained with National City. In May 2006, National City acquired Pioneer Bank and Sigillito's IOLTA and business accounts were once again under the control and examination of former Allegiant Bank employees. Sometime before the official transfer from Pioneer Bank to National City Bank, Sigillito's IOLTA account was investigated.

In May 2006, National City acquired Pioneer Bank and Sigillito's IOLTA and business accounts were once again under the supervision of former Allegiant Bank employees, including Shaun Hayes, President and CEO of National City's Missouri banking.

In 2006, Martin Sigillito maintained an IOLTA at National City Bank for two days.

You have agreed to stipulate and have stipulated that PNC Bank, N.A. is successor in interest to Allegiant Bank, Pioneer Bank, and National City Bank.

With respect to the foregoing, please designate a representative to testify on Your behalf concerning the following topics:

a.    The identity of persons with positions of employment in the Trust Department who remained with National City after National City purchased Allegiant Bank in 2004;

b.      The identity of the former Allegiant Bank employees besides Shaun Hayes under whose supervision Sigillito's IOLTA and business accounts were in May 2006 when National City acquired Pioneer Bank;

c.      The facts and circumstances of Sigillito maintaining his IOLTA account for only two days after the account officially transferred from Pioneer Bank to National City Bank;

d.      The facts and circumstances of National City asking Sigillito to take his his IOLTA account and banking business elsewhere in 2006;

e.      The facts and circumstances of Allegiant Bank suspending activity in Martin Sigillito's IOLTA in October 2001;

f.      The reasons why Allegiant Bank suspended activity in Martin Sigillito's IOLTA in October 2001;

g.      The facts and circumstances of Allegiant Bank ceasing to do business with Martin Sigillito before January 1,2 2002;

h.      The reasons why Allegiant Bank ceased doing business with Martin Sigillito before January 1, 2002;

i.      The facts and circumstances of Allegiant Bank requiring Martin Sigillito to close his IOLTA at the bank in December 2001;

j.      The reasons why Allegiant Bank required Martin Sigillito to close his IOLTA at the bank in December 2001;

k.      The facts and circumstances of Allegiant Bank informing Martin Sigillito in October 2001 that it would no longer serve as IRA custodian for any of Sigillito's investors.

l.      The reasons why Allegiant Bank informed Martin Sigillito in October 2001 that it would no longer serve as IRA custodian for any of Sigillito's investors; and

m.      The facts and circumstances of Martin Sigillito maintaining an IOLTA at National City for two days in 2006.

n.      The reasons why, to Your knowledge, Martin Sigillito maintained an IOLTA at National City for only two days in 2006.

9.      You claim that documentary records are difficult to locate and scant, that You have undertaken extensive efforts to locate and interview former employees and to locate documents and that, among other things, You have now located account agreements for the fourteen plaintiffs that were customers of Allegiant Bank.

With respect to the foregoing, please designate a representative to testify on Your behalf concerning the following topics:

a.      The facts and circumstances of Your efforts to locate documents in this case;

b.      The documents You have located as a result of Your efforts to locate documents in this case;

c.      The places and files where You found the documents You have located as a result of Your efforts to locate documents in this case;

d.      Facts and information contained in the documents You have located as a result of Your efforts to locate documents in this case;

e.      Your document retention policy or policies from 2001 to the present at:

    (1)     Allegiant Bank;

    (2)     Pioneer Bank;

    (3)     National City Bank; and

    (4)     PNC Bank.

f.      Your document destruction policy or policies from 2001 to the present at:

(1)   Allegiant Bank;

(2)   Pioneer Bank;

(3)   National City Bank; and

(4)   PNC Bank.

10.   Your First Amended Answer, Affirmative Defenses, and Counterclaim to Plaintiffs' First Amended Complaint (docket no. 77) filed June 18, 2015 at paragraphs 23 and 25 of Your affirmative defenses states, in part, "PNC did not act in bad faith or have actual or constructive knowledge of Sigillito's fraudulent scheme" and "PNC did not deliberately avoid knowledge of Sigillito's fraudulent scheme."

You have agreed to stipulate and have stipulated that PNC Bank, N.A. is successor in interest to Allegiant Bank, Pioneer Bank, and National City Bank.

Thompson Coburn, LLP has provided to the Court documents claimed as privileged and the Court may order some or all of the documents Plaintiffs seek pursuant to their Motion to Compel Third Party Discovery (docket no. 51).

With respect to the foregoing and any such documents the Court orders produced,, please designate a representative to testify on Your behalf concerning the following topics:

a.   Your knowledge and understanding of the facts and events described in those documents  at the time You transferred to Betty Womack the proceeds of $56,715.19 received from liquidation of the asset as referenced in D-Aguilar.3367;

11.   The facts and circumstances of the investigation of Sigillito's IOLTA account at Pioneer Bank conducted sometime before the official transfer from Pioneer Bank to National City Bank, Sigillito's IOLTA account was investigated to which You admit in Your First Amended Answer, Affirmative Defenses, and Counterclaim to Plaintiffs' First Amended Complaint (docket no. 77) filed June 18, 2015.

12. Your knowledge of the facts and circumstances of the facts alleged in Paragraph 387 of the Amended Complaint (docket no. 6).

13. The factual bases for, and Your position on the merits of, Your Counterclaim against Plaintiffs alleged in Your First Amended Answer, Affirmative Defenses, and Counterclaim to Plaintiffs' First Amended Complaint (docket no. 77) filed June 18, 2015.

14. The factual bases for, and Your position on the merits of, Your Affirmative Defenses asserted in Your First Amended Answer, Affirmative Defenses, and Counterclaim to Plaintiffs' First Amended Complaint (docket no. 77) filed June 18, 2015.

15. Plaintiffs reserve the right to supplement this Notice of Videoptaed Rule 30(b)-6 Deposition of PNC Bank, N.A., prior to the deposition.

Respectfully submitted,                    Respectfully submitted,

JONATHAN F. ANDRES P.C.                    LAW OFFICES OF SEBASTIAN RUCCI

Jonathan F. Andres (E.D. Mo. 39531MO)      Sebastian Rucci (E.D. Mo. 178114CA)
7733 Forsyth Boulevard, Suite 700          16400 Pacific Coast Hwy, Suite 212
St. Louis, MO 63105                        Huntington Beach, CA 92649
Tel: (314) 862-6800                        Tel: (330) 720-0398
Fax: (314) 862-1606                        Fax: (330) 954-0033
Email: andres@andreslawpc.com              Email: SebRucci@gmail.com
Attorneys for Plaintiffs                   Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served via U.S. Mail, first–class postage prepaid, and via email, this 2nd day of June, 2015 to:

Jeffrey J. Kalinowski
jkalinoski@bryancave.com
Jeffrey S. Russell
jsrussell@bryancave.com
Herbert R. Giorgio
herb.giorgio@bryancave.com
Darci F. Madden
dfmadden@bryancave.com
Hal A. Goldsmith
hal.goldsmith@bryancave.com
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102

Counsel for Defendant PNC Bank, N.A.