UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RICHARD AGUILAR, *et al.*,          )
                                    )
          Plaintiffs,               )
                                    )
v.                                  )     Case No. 4:14-cv-985-LRR
                                    )
PNC BANK, N.A.,                     )     Judge:  Honorable Linda R. Reade
                                    )     (Chief Judge N. Dist. Iowa)
          Defendant.                )

## THOMPSON COBURN LLP AND JAN ROBEY ALONZO'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL RELEASE OF PRIVILEGED DOCUMENTS DUE TO IMPLIED WAIVER

THOMPSON COBURN LLP
John R. Musgrave, 20359MO
Kenton E. Knickmeyer, 29158MO
One US Bank Plaza
St. Louis, Missouri  63101
jmusgrave@thompsoncoburn.com
kknickmeyer@thompsoncoburn.com
314-552-6000
FAX 314-552-7000

*Attorneys for Thompson Coburn LLP and Jan Robey Alonzo*

## TABLE OF CONTENTS

Page No.

I.  INTRODUCTION ........................................................................................... 1

II.  RESPONDENTS' INTEREST IN PLAINTIFFS' PRESENT MOTION ........................... 3

III.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...................................... 5

    A.  Respondents Created Opinion Work Product While Providing Legal
    Services to Allegiant Bank Relating to Allegiant's Dealings with
    Sigillito Involving the British Lending Program.................................... 5

    B.  Relevant Procedural History. ............................................................. 7

IV.  ARGUMENT ............................................................................................... 10

    A.  Plaintiffs Have Not Shown that Respondents Waived the Protections
    Accorded Their Opinion Work Product Under the Work Product
    Doctrine. ........................................................................................ 10

    B.  Plaintiffs Have Not Shown that the Documents to which They Now Seek
    Access Were Previously Requested in a Timely Discovery Request
    Made in this Case. .......................................................................... 13

V.  CONCLUSION ............................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Corrigan v. Armstrong, Teasdale, Schlafly, Davis & Dicus*, 824 S.W.2d 92
(Mo. Ct. App. E.D. 1992) ......................................................................................4

*Farmland Indus. v. Frazier-Parrott Commodities, Inc.*, 871 F.2d 1402
(8th Cir. 1989)......................................................................................................13

*Hickman v. Taylor*, 329 U.S. 495 (1947)..............................................................12, 13

*In re Green Grand Jury Proceedings*, 492 F.3d 976 (8th Cir. 2007) ........................3, 11

*In re Murphy*, 560 F.2d 326 (8th Cir. 1977) ..............................................................10

*Police Ret. Sys. of St. Louis v. Midwest Inv. Advisory Serv., Inc.*, 940 F.2d 351
(8th Cir. 1991).......................................................................................................13

*United States v. Under Seal (In re Grand Jury Proceedings # 5)*, 401 F.3d 247
(4th Cir. 2005)......................................................................................................11

**Other Authorities**

Rule 26(a)(1), (b), FED. R. CIV. P. .........................................................................11, 13

Rule 34, FED. R. CIV. P. ...............................................................................................14

Rule 37, FED. R. CIV. P. ............................................................................................2, 13

Rule 45, FED. R. CIV. P. ......................................................................................2, 13, 14

Local Rule 37-3.04.........................................................................................................2

Thompson Coburn LLP ("Thompson Coburn") and Jan Robey Alonzo ("Ms. Alonzo") (collectively, "Respondents") submit this Memorandum in opposition to Plaintiffs' Motion to Compel Release of Privileged Documents Due to Implied Waiver (ECF Doc. #s 159, 160) (Plaintiffs' "Present Motion").

## I.    INTRODUCTION

Plaintiffs' Present Motion to Compel is the fourth instance in which Plaintiffs have filed motions challenging whether subsets of the documents sought pursuant to the Present Motion remain protected from disclosure by the attorney–client privilege and/or the work product doctrine.[1]   In Plaintiffs' First Motion, they raised what is conceptually the same argument of implied waiver upon which their Present Motion is based. ECF Doc. # 52, p. 24.[2]   In response to that argument, we pointed out several of the most obvious reasons why Plaintiffs' contention that an implied waiver has occurred is fallacious. ECF Doc. # 66, pp. 31–35.   The Court denied

---

[1] The three prior motions are: (1) Plaintiffs' Motion to Compel Third Party Discovery (ECF Doc. # 51)(Plaintiffs' "First Motion"); (2) Plaintiffs' Motion to Compel Production of Six Records (ECF Doc. # 86) (Plaintiffs' "Second Motion"); and (3) Plaintiffs' Motion for Partial Relief from Order (ECF Doc. # 123)(Plaintiffs' Third Motion").

The overlap between the documents sought pursuant to the three prior motions and those sought pursuant to the Present Motion is substantial, but not complete.  The relevant time frame within which documents sought pursuant to the Present Motion were created is narrower than that involved in the prior motions.  The non-temporal aspect of Plaintiffs' description of documents sought in the Present Motion, however, is more expansive than in the prior motions, to the point that the Present Motion actually seeks some documents that have never even been the subject of a discovery request served by Plaintiffs in this action.  *Compare* ECF Doc. # 160, p. 14 (describing documents presently sought) *with* ECF Doc. #s 52-1, 52-2 (subpoenas seeking Thompson Coburn materials).  Had Plaintiffs subpoenaed documents from Thompson Coburn using the description used by Plaintiffs in their present motion, Thompson Coburn would have identified in its privilege log additional documents that are protected from disclosure by the attorney-client privilege and/or the work product doctrine.

[2] Plaintiffs' Present Motion references materials PNC Bank filed in connection with the now pending motions for summary judgment as bases for Plaintiffs' present implied waiver argument.  The summary judgment motions had not been filed when Plaintiffs advanced their implied waiver theory in support of Plaintiffs' First Motion To Compel.  But both Plaintiffs' First Motion and Plaintiffs' Present Motion rest, in the final analysis, on positions first taken by PNC Bank in its pleadings. The factual details and legal arguments advanced by PNC Bank in its summary judgment papers are extensions of the positions described in PNC Bank's pleadings.  Consequently, the reasons that warranted denial of Plaintiffs' First Motion insofar as that motion was predicated on the implied waiver theory also compel the conclusion that Plaintiffs' Present Motion should be denied.

Plaintiffs' First Motion (ECF Doc. # 90), as well as Plaintiffs' Second Motion. ECF Doc. # 114.

Plaintiffs' Third Motion remains unresolved, but for the reasons stated in Thompson Coburn's

and Defendant PNC Bank's responses to that motion (ECF Doc. #s 130, 131), it should be

denied.

Plaintiffs' Present Motion, like their three prior motions, suffers from obvious procedural

and substantive defects. Procedurally, the Present Motion: (a) is untimely;[3] (b) seeks to compel

production of some documents that were never even the subject of a discovery request made in

this action;[4] (c) does not comply with Local Rule 37-3.04;[5] and (d) seeks relief only from PNC

Bank, despite a clear record (ECF Doc. # 52-4) showing that Thompson Coburn possesses what

are, at least by volume, most of the documents Plaintiffs seek. Substantively, the Present

Motion: (a) is predicated on a theory – implied waiver by PNC Bank – that was (i) asserted in

support of Plaintiffs' First Motion, and (ii) properly rejected by the Court when it denied that

Motion;[6] and (b) fails to suggest how Thompson Coburn and Ms. Alonzo's independent rights to

---

[3] Pursuant to the Court's Scheduling Order (ECF Doc. # 37), all motions to compel were to be filed by July 5, 2015. The Present Motion to Compel was not filed until August 25, 2015.

[4] Plaintiffs' descriptions of documents sought pursuant to the Present Motion (*see* ECF Doc. #s 159, pp. 3 – 4; 160, p. 14) do not conform to the descriptions Plaintiffs employed in the discovery requests propounded in this action. *See, e.g.,* ECF Doc. #s 52-1, 52-2. As a result, there are documents that meet Plaintiffs' description of documents sought pursuant to Plaintiffs' Present Motion that were never the subject of a discovery request made by Plaintiffs in this action. Such a request is an essential predicate for a motion to compel. *See* Rule 45(g), FED. R. CIV. P.; Rule 37(a)(3), FED. R. CIV. P.

[5] Plaintiffs' Present Motion does not attest that Plaintiffs' counsel sought to resolve the dispute before filing the motion. In fact, Plaintiffs' counsel made no such efforts. Respondents frankly doubt that any such conference between counsel would have produced an agreement by Respondents to produce any of the documents sought by Plaintiffs' Present Motion. Such a conference might, however, (a) have alerted Plaintiffs' counsel to the fact that the very theory upon which this motion rests has been at least implicitly rejected by the Court; (b) reminded Plaintiffs' counsel that the record shows the vast majority of the documents they seek are in the possession of Thompson Coburn and constitute inviolate opinion work product; and (c) led Plaintiffs' counsel to appreciate that some of the documents sought have not even been the subject of discovery requests. Had Plaintiffs' counsel considered these matters as a result of such a conference, they might have decided not to consume the Court's, Defendant's, Respondents' and their own time and resources dealing with this motion.

[6] *See* note 2, *supra.*

protection of their opinion work product have been waived or might otherwise be avoided. Each and all of these reasons require that Plaintiffs' Present Motion be denied.

## II.    RESPONDENTS' INTEREST IN PLAINTIFFS' PRESENT MOTION

The Present Motion does not expressly seek any relief directly against Respondents.[7] Respondents make no claim to possess any privilege or protection that applies to the documents sought by Plaintiffs which Respondents do not possess (i.e., the "clawed back documents"). Nor do Respondents claim they possess any right independent of PNC Bank's rights that should prevent the release of documents that *do not* constitute Respondents' work product (e.g., the written communications Respondents received from their former client, Allegiant Bank ("Allegiant"), such as the October 9, 2001 facsimile voluntarily produced for the Court's *in camera* review, that are protected from disclosure solely as privileged attorney-client communications).

Plaintiffs have, however, explicitly asked the Court to compel disclosure of materials that include Respondents' opinion work product. ECF Doc. # 160, p. 14 ("all documents . . . in Jan Alonzo's possession concerning the Custodial Account Question from October 2001 through December 2001").[8] The record already makes clear (*see* ECF Doc # 52-4; *see also* ECF Doc. 66,

---

[7] *See* ECF Doc # 159, at p. 4 (asserting that "this Court should order PNC to produce . . ."); ECF Doc # 160, at p. 14 (asserting that "this Court should order PNC to produce . . . or in the alternative for PNC to produce . . .").

[8] Thompson Coburn's privilege log, ECF Doc. 52-4, clearly identifies a number of documents as notes taken/made by Ms. Alonzo during the stated time frame. Plaintiffs correctly conclude that many of these are notes made by Ms. Alonzo while she was conversing with either her client – i.e., representatives of Allegiant – or counsel representing persons that had assumed an adversarial posture relative to Allegiant – i.e., counsel retained by Sigillito or counsel retained by Mark Gilbert Morse ("MGM"), the British law firm that was the borrower on many of the Loan Agreements held as assets in the self-directed IRA accounts from which Allegiant was in the process of resigning as custodian commencing in October, 2001. ECF Doc. # 160, pp. 5 – 6. Such materials are classic opinion work product. *In re Green Grand Jury Proceedings,* 492 F.3d 976, 981-82 (8th Cir. 2007).

p. 5 and n. 2), that Thompson Coburn possesses the opinion work product Plaintiffs seek. Respondents' own rights are implicated by Plaintiffs' efforts to access these materials.

Respondents reasonably anticipate that if the Court were to grant Plaintiffs' Present Motion, Plaintiffs would then contend either that (a) PNC Bank is obliged to secure from Thompson Coburn the materials that meet the descriptions of documents sought pursuant to Plaintiffs' Present Motion,[9] and/or (b) Thompson Coburn is somehow obliged to make the documents available to Plaintiffs. Indeed, were the Court to grant Plaintiffs' Present motion, it would be unsurprising if Plaintiffs then contended that since Respondents now have notice of Plaintiffs' present attempt to secure the opinion work product materials Thompson Coburn possesses, any objections Respondents have to the production of their opinion work product not asserted in response to the Present Motion are waived.

Accordingly, Respondents are submitting this Memorandum to explain why, insofar as Plaintiffs' Present Motion seeks access to materials constituting Respondents' opinion work product and/or documents that were not previously subpoenaed from Respondents but which are possessed by Thompson Coburn, the motion must be denied.

---

[9] It is doubtful whether Thompson Coburn would be obliged to provide its opinion work product to a former client upon that former client's request. *See, Corrigan v. Armstrong, Teasdale, Schlafly, Davis & Dicus,* 824 S.W.2d 92, 98 (Mo. Ct. App. E.D. 1992). But whether as between Thompson Coburn and a remote successor to its former client, Thompson Coburn is obliged to deliver previously created opinion work product to that remote successor (here, PNC Bank) is not the real issue raised by Plaintiffs' Present Motion. The real issue that should concern this Court is whether, over Thompson Coburn's objections, a person not privy to the attorney-client relationship that existed between Thompson Coburn and Allegiant Bank has a right to access Thompson Coburn's opinion work product (a) created in the course of that attorney-client relationship, and (b) that remains in Thompson Coburn's possession.

## III.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.  Respondents Created Opinion Work Product While Providing Legal Services to Allegiant Bank Relating to Allegiant's Dealings with Sigillito Involving the British Lending Program.

As explained in more detail in Respondents' submissions in opposition to Plaintiffs' First and Third Motions (ECF Doc. #s 66, 130), during 2001 Ms. Alonzo was a Thompson Coburn partner, among others, who regularly provided legal services to Allegiant.  Beginning in October, 2001, Ms. Alonzo and three other Thompson Coburn partners (who were litigation and tax specialists), performed legal work for Allegiant relating to a matter[10] described in Thompson Coburn's billing records as  the "Custodial Account Question."

That matter arose out of a situation in which, beginning in 2000, Allegiant acted as the custodian of assets held in self-directed IRAs established by individuals who instructed Allegiant to invest the accounts in accordance with directions to be given by their lawyer, Martin Sigillito. ECF Doc. # 66, pp. 7-13.  Sigillito directed Allegiant to lend the assets deposited in each such account to a borrower located in the United Kingdom.  ECF Doc. # 66-3; *see also,* ECF Doc. # 136, p. 7, ¶¶37, 38.  In mid-September 2001, Allegiant's investment committee decided that Allegiant should refuse to open additional self-directed IRA accounts for Sigillito's clients. ECF # 136, p. 12, ¶68.  Soon thereafter, Art Weiss, the Allegiant executive to whom the trust department reported, concluded that Allegiant should resign as custodian of those IRAs.  ECF Doc. # 136, p. 13, ¶¶81, 82.

Those decisions precipitated a dispute between Allegiant and Sigillito.  ECF Doc. 130-4, p. 4, lines 13–20.  Sigillito, himself a lawyer, lawyered up (ECF Doc. # 123-1), as did MGM, the

---

[10] As confirmed during Ms. Alonzo's deposition, for billing purposes, Thompson Coburn assigned client numbers to each of its clients and assigned matter names and numbers to each discrete assignment for which a client engaged the firm to provide legal services to the client.

British law firm that was the borrower on a number of the Loan Agreements held in the self-directed IRAs. ECF Doc. #s 52-10, 52-11. Allegiant, unsurprisingly, engaged its own counsel – Thompson Coburn, including its then partner, Ms. Alonzo.

Various non-privileged discovery materials, some of which are in the record, show that Ms. Alonzo (a) communicated with Allegiant personnel on various occasions; (b) consulted at various points with litigation and tax partners at Thompson Coburn; (c) on October 2, 2001, met with Mr. Sigillito in his capacity as "counsel for lenders" – i.e., the Allegiant self-directed IRA account holders; (d) on October 9, 2001, conversed by phone with a lawyer for the borrower, MGM; (e) commencing on October 11, 2001, had a number of oral and written communications with lawyers hired by Martin Sigillito; and (f) was involved in the preparation of Allegiant's resignation notices and the process by which Allegiant transferred the assets of the self-directed IRAs to the successor custodian designated by the account holders. *E.g.*, ECF Doc. # 72-1. Thompson Coburn's privilege log shows that Ms. Alonzo made notes during the course of her work for Allegiant on the Custodial Account Question. ECF Doc. # 52-4. These notes are among the documents Plaintiffs seek pursuant to their Present Motion. ECF Doc. # 160, pp. 5–6, 14. Protection of Thompson Coburn and Ms. Alonzo's interests in these notes is the primary reason why Respondents are filing this Memorandum.

Plaintiffs allege that at the end of September, 2001 – i.e., after Allegiant decided to refuse new business from Sigillito's clients but before Allegiant actually notified Sigillito's clients that it was resigning as custodian of their self-directed IRA accounts[11]--one of Sigillito's clients, Betty Womack, directed that the asset in her self-directed IRA account (a Loan Agreement with

---

[11] Allegiant's notice of its resignation was mailed to the account holders on November 13, 2001. ECF Doc. # 72-1, p. 24, ¶77.

MGM as the borrower) be liquidated and the account closed. ECF Doc. # 141, p. 9. Materials in the record suggest that liquidation was accomplished when Sigillito arranged for the purchase of the Loan Agreement to be effected through his IOLTA account. ECF Doc. # 141, pp. 9-10. Ms. Womack's IRA was liquidated in 2001, she was paid in full, and no claim is made on her behalf in this lawsuit. ECF Doc. # 151, pp. 10-11. Plaintiffs contend that the funds used to effectuate the purchase belonged to an entity controlled by Plaintiff Linda Givens that were being invested in the British Lending Program. ECF Doc. # 141, Facts 7.11–7.14. Ms. Givens concedes that even if that is correct, those monies were repaid. ECF Doc. # 6, ¶180; *see also* ECF Doc. # 151, pp. 10-11. Thus, no claim that any person sustained any damage connected with this series of transactions is being asserted in this lawsuit. These transactions nonetheless provide the factual underpinnings for Plaintiffs' contention in the Present Motion that they should be granted access to all records of Thompson Coburn's communications with Allegiant and all Thompson Coburn's work product created in connection with the Custodial Account Question during the last quarter of 2001. ECF Doc. #s 159, 160.

## B.    Relevant Procedural History.

Nearly 13 years after these events, some of the Plaintiffs commenced this action. ECF Doc. # 1. Others joined later. ECF Doc. # 6. By agreement of the Parties, discovery opened in December, 2014 and was supposed to conclude by June 30, 2015. ECF Doc. # 37. Any motions to compel were to be filed within 5 days thereafter. ECF Doc. # 37.

Plaintiffs' initial round of discovery requests included subpoenas issued on March 31, 2015 and directed to Thompson Coburn and Ms. Alonzo. ECF Doc. # 52-1. Before the return date of these subpoenas arrived, Plaintiffs issued a second subpoena to Thompson Coburn. ECF Doc. # 52-2. A few weeks later, Plaintiffs issued a third subpoena to Thompson Coburn. *See* Ex. A, attached hereto.

Respondents timely objected to each of the first 3 subpoenas. ECF Doc. # 52-3.[12] Thompson Coburn produced non-privileged documents responsive to all three subpoenas directed to it, and a privilege log itemizing those responsive documents Thompson Coburn[13] possesses that are protected by the attorney–client privilege, constitute work product, or both. ECF Doc. # 52-4.

Plaintiffs then moved to compel production of all documents identified on Thompson Coburn's privilege log. ECF Doc. #s 51, 52. As grounds for compelling production, Plaintiffs asserted, among other things, that PNC Bank had impliedly waived all claims of privilege associated with the materials listed on Thompson Coburn's privilege log by virtue of the contents of its Answer to Plaintiffs' First Amended Complaint. ECF Doc.# 52, pp. 24-25.

Thompson Coburn and Ms. Alonzo opposed Plaintiff's First Motion. ECF Doc. # 66. In response to the implied waiver argument, we pointed out that (a) Thompson Coburn and Ms. Alonzo have protected interests in their opinion work product that are independent of their (former) client's interests, and, consequently, a waiver by PNC Bank should not render Thompson Coburn or Ms. Alonzo susceptible to a motion to compel production of their work product, and (b) on its face, Plaintiffs' argument of implied waiver via a responsive pleading is substantively fallacious. ECF Doc. # 66, pp. 31 – 35.

After hearing oral argument and reviewing materials Thompson Coburn voluntarily produced for *in camera* inspection, the Court denied Plaintiffs' First Motion. ECF Doc. # 90.

---

[12] Thompson Coburn also objected to the last subpoena served on it, but produced the subpoenaed time records, redacted to conceal privileged information and information protected by the work product doctrine.

[13] Ms. Alonzo resigned from Thompson Coburn to accept a different position several years after the events at issue, but many years before the subpoenas were issued. She did not take any files with her when she left Thompson Coburn. While she had no responsive documents, the documents in Thompson Coburn's possession include Ms. Alonzo's opinion work product and records of her privileged communications with Allegiant personnel.

Plaintiffs then proceeded to take Ms. Alonzo's deposition. While Ms. Alonzo generally confirmed the obvious--that the documentary evidence seems to reflect her involvement in these events--she testified that her recollection of the events involved in the Custodial Account Question nearly 14 years after she worked on the matter is quite limited. As she described it, her recollection of the matter consists, in its entirety, of the following:

> There was one meeting Allegiant was present, representatives of Allegiant were present, Sigillito was present, others were present I don't remember, and it had to do with whether Allegiant was going to do business or not do business with Sigillito. There seemed to be some dispute or tension over that. Allegiant was concerned that there could be some – some controversy or lawsuit arising out of it.

Alonzo Dep. 21:1-3, 13-20 (ECF Doc. # 130). Beyond that very general recollection, Ms. Alonzo had no memory of the Custodial Account Question or the work she had done relating to it nearly 14 years before her deposition was taken. None of her time records, the other non-privileged documents Thompson Coburn produced from its files concerning the engagement, or any of the other documents Plaintiffs' and PNC Bank's counsel asked her about during the course of a seven hour deposition refreshed her recollection.

Dissatisfied with the outcome of Plaintiffs' First Motion and the fact that none of Ms. Alonzo, the lawyers retained by Sigillito and MGM with whom Ms. Alonzo interacted during the fall of 2001, or the individuals involved in the matter on behalf of Allegiant have much recollection of the events that occurred nearly fourteen years ago, Plaintiffs filed the Third Motion. In that motion, Plaintiffs claim "necessity" as a "new" basis for the Court to compel disclosure of Thompson Coburn's opinion work product that was the subject of Plaintiffs' First Motion. ECF Doc. # 123, 124. Both Thompson Coburn and PNC Bank have opposed the Third Motion. ECF Doc. #s 130, 131. As of the time of filing this Memorandum, the Court has not ruled on Plaintiffs' Third Motion.

On August 25, 2015, Plaintiffs filed the Present Motion. ECF Doc. #s 159, 160. As in their prior motions, Plaintiffs argue that (a) PNC Bank impliedly waived the attorney-client privilege and work product protections for the documents they ask the Court to compel PNC Bank to produce, and (b) their claimed "need" for these documents overrides the protections accorded the documents as attorney's opinion work product and privileged attorney-client communications. These arguments are no more meritorious now than when previously made.

## IV.  ARGUMENT

### A.  Plaintiffs Have Not Shown that Respondents Waived the Protections Accorded Their Opinion Work Product Under the Work Product Doctrine.

Plaintiffs argue that PNC Bank has waived its privileges by virtue of its answer and briefing on the pending summary judgment motions.   As explained in Respondent's memorandum opposing Plaintiffs' First Motion, ECF Doc. 66, pp. 31–35, that argument is analytically flawed.  But even if it were not, Plaintiffs' argument of implied waiver entirely ignores the fact that much of the materials Plaintiffs seek (a) constitute Respondents' opinion work product which (b) is in  Thompson Coburn's possession. *See,* ECF Doc. #s 52-4; 66, pp. 15–16, 20, 28–35.

The U.S. Court of Appeals for the Eighth Circuit has long recognized that attorney's opinion work product "enjoys nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *In re Murphy,* 560 F.2d 326, 336 (8th Cir. 1977).  Despite the fact that Respondents have previously pointed this out (*e.g.,* ECF Doc. # 66, p. 31; ECF Doc. #130, p. 16), Plaintiffs have never identified any authority suggesting that "necessity" of the sort Plaintiffs (erroneously) contend exists in this case trumps the "nearly absolute immunity" accorded opinion work product.  Our research suggests that only a waiver of the work product protections by a person entitled to claim those protections or the "crime-fraud" exception have

- 10 -

been recognized as grounds for allowing access to a lawyer's opinion work product.[14] The Court has previously rejected Plaintiffs' arguments that the crime-fraud exception applies in this case. ECF Doc. # 90. Plaintiffs' Present Motion does not suggest that the Court should revisit that issue. Plaintiffs have offered no evidence or argument suggesting that *Respondents* have in any way, shape or form waived the protections that the work product doctrine accords their opinion work product.

Respondents, as lawyers, have rights to protection of their work product that are independent of their clients' rights to preserve the confidentiality of that work product. *United States v. Under Seal (In re Grand Jury Proceedings # 5)*, 401 F.3d 247, 250 (4th Cir. 2005), *citing Hickman v. Taylor*, 329 U.S. 495, 511 (1947); *see also, In re Green Grand Jury Proceedings*, 492 F. 3d 976, 980 (8th Cir. 2007)(recognizing that a lawyer's right to claim work product protection for work product in the lawyer's possession is *not* inevitably destroyed where the crime-fraud exception would apply to the same material in the client's hands). Thus, to obtain access to Respondents' work product that remains in Respondents' possession, Plaintiffs must show that Respondents, not just PNC Bank (as the successor to Respondents' former client, Allegiant) have waived the protection accorded Respondents' opinion work product.

Plaintiffs have made no effort to demonstrate such a waiver. That is scarcely surprising. Respondents are not parties to this action. Consequently, Respondents have not submitted any pleadings or other materials that might give rise, e.g., to an implied waiver of their rights to protection of their opinion work product. In fact, Respondents' only filings in this case have

---

[14] As explained in Respondents' Second Memo (ECF Doc. # 130, p 17), the principle that necessity does not warrant production of opinion work product is confirmed by the provisions of Rule 26(b)(3)(B). Attorney's opinion work product, such as attorney's notes, is inevitably permeated by the mental impressions, conclusions, opinions or legal theories of the attorney who made the notes. Consequently, the only way to implement the requirement of Rule 26(b)(3)(B) when opinion work product is to be produced is to redact the entirety of the document.

been calculated to protect their interests in their work product and their former client's successor's interests in that material and the confidential attorney-client communications that occurred between Respondents and Allegiant. There simply is no factual basis in the record of this case upon which Plaintiffs could plausibly claim to have found grounds for arguing that Respondents have waived their rights to prevent Plaintiffs from accessing Respondents' opinion work product.

There are sound policy reasons why the Court should deny Plaintiffs' Present Motion seeking access to Respondents' work product. Discovery in this action is closed. Consequently, the general rule that permits parties to pursue discovery of materials that *may lead to the discovery* of admissible evidence has no application. Unless Plaintiffs can demonstrate that the materials they seek constitute *admissible evidence of some fact relevant to the claims or defenses at issue* in this action, no legitimate purpose would now be served by granting Plaintiffs access to Respondents' opinion work product. In *Hickman v. Taylor,* the Court made precisely this point when explaining why an attorney's thoughts – i.e., attorney's opinion work product--have historically been viewed as "inviolate". The Court observed that no

> showing of necessity can be made . . . so as to justify production [of statements made orally to an attorney, whether presently in the form of his mental impressions or memoranda]. Under ordinary conditions, forcing an attorney to repeat or write out all that witnesses have told him and to deliver the account to his adversary gives rise to grave dangers of inaccuracy and untrustworthiness. *No legitimate purpose is served by such production.* The practice forces the attorney to testify as to what he remembers or what he saw fit to write down regarding witnesses' remarks. *Such testimony could not qualify as evidence;* and to use it for impeachment or corroborative purposes would make the attorney much less an officer of the court and much more an ordinary witness. The standards of the profession would thereby suffer.

*Hickman,* 329 U.S. at 512–13 (emphasis supplied).

The dangers described by the Court in *Hickman* are obviously present in this case. As Ms. Alonzo testified, her present recollection of anything relating to the Custodial Account Question is very limited. It is obvious that her recollection of the matters to which her notes taken nearly fourteen years ago pertain is essentially non-existent. Were her notes taken at that point now produced, there would be no possibility that their contents could be (a) authenticated as representing either a complete or an accurate record of what was said during the conversations in which the notes were made, (b) explained, (c) expanded upon, or (d) clarified by Ms. Alonzo. To the extent the notes reflect Ms. Alonzo's legal analysis, they are irrelevant and inadmissible opinion evidence.[15] To the extent the notes may seem to record even parts of what was said in conversations Ms. Alonzo had with Mr. Jerry (Sigillito's lawyer) or Mr. Wolkowitz (MGM's lawyer), the notes only possible relevance would be to establish the truth of their contents. As such they would constitute inadmissible hearsay. The probability that, if the notes were to be (improperly) admitted into evidence, they would provide incomplete or otherwise inaccurate descriptions of what transpired is obviously high.

For all of these reasons, to the extent that Plaintiffs' Present Motion seeks access to Respondents' opinion work product, the motion must be denied.

**B.      Plaintiffs Have Not Shown that the Documents to which They Now Seek Access Were Previously Requested in a Timely Discovery Request Made in this Case.**

In order to secure an order compelling production of documents pursuant to either Rule 37, FED. R. CIV. P. or Rule 45, FED. R. CIV. P., Plaintiffs must first show that the documents sought are documents that the target of the motion was obliged to produce pursuant to (a) Rule

---

[15] *Cf. Farmland Indus. v. Frazier-Parrott Commodities, Inc.*, 871 F.2d 1402, 1409 (8th Cir. 1989)(recognizing the impropriety of admitting attorney's legal analysis into evidence); *see also, Police Ret. Sys. of St. Louis v. Midwest Inv. Advisory Serv., Inc.*, 940 F.2d 351, 357 (8th Cir. 1991)(same).

26(a)(1), (b) a document request made pursuant to Rule 34, FED. R. CIV. P., or (c) a subpoena duly issued and served pursuant to Rule 45, FED. R. CIV. P. Presumably, Plaintiffs can make that showing as to what they describe as the "clawed back" documents. Certainly, Plaintiffs can make that showing as to the documents that Thompson Coburn listed on its privilege log. But even though Plaintiffs' Present Motion seeks production of documents beyond those that were "clawed back" or listed on Thompson Coburn's privilege log, Plaintiffs' have not suggested, much less shown, how the other documents described in their prayer for relief are linked to a discovery request previously made in this action.

None of the subpoenas issued by Plaintiffs to Thompson Coburn or Ms. Alonzo directed the recipient to produce "all documents, letters and reports in Jan Alonzo's possession concerning the Custodial Account Question from October 2001 through December 2001." ECF Doc. #s 52-1, 52-2. Yet, Plaintiffs' Present Motion seeks an order compelling disclosure of the documents that meet this description. ECF Doc. # 160, p. 14. Although it is less clear that Plaintiffs also seek disclosure of "all communications between Jan Alonzo, and Bryan Cave regarding any investigation, or lack of investigation of Sigillito" (*compare* ECF Doc. # 159, p. 3 *with* ECF Doc. # 160, p. 14), Plaintiffs certainly claim that any privilege associated with such materials has been waived. ECF Doc. # 160, p. 14. They have not, however, pointed to any discovery request made in this action that would have required disclosure of such communications.

To the extent that Plaintiffs seek to compel production of documents not properly requested in the course of discovery in this action, the motion should be denied.

## V.    CONCLUSION

The Court previously ruled that Respondents have met their burden to demonstrate a proper factual basis for objecting to disclosure of the documents listed on Thompson Coburn's

privilege log. ECF Doc. # 90. Plaintiffs' Present Motion does not challenge that ruling. Indeed, its very title – Plaintiffs' Motion To Compel Release of Privileged Documents Based on Implied Waiver--concedes that the documents now sought are privileged. Instead, Plaintiffs ask the Court to order production of these privileged materials on the theory that *PNC Bank* impliedly waived its rights to prevent Plaintiffs from accessing the materials. But Plaintiffs have neither contested the existence of Respondents' independent rights to protect Respondents' opinion work product nor asserted that Respondents' rights have been waived. Nor have Plaintiffs suggested how the Court can properly order PNC Bank to produce documents that the record shows are in Thompson Coburn's possession and subject to Thompson Coburn's independent right to claim opinion work product protection.

Because Plaintiffs have failed to make any showing on these matters, Plaintiffs' Present Motion should be denied, at least to the extent it seeks production of Thompson Coburn's opinion work product. It must also be denied to the extent it seeks materials not described in any discovery request made while discovery in this action was open.

Respectfully submitted,

**THOMPSON COBURN LLP**

By  /s/ Kenton E. Knickmeyer
    John R. Musgrave, 20359MO
    Kenton E. Knickmeyer, 29158MO
    One US Bank Plaza
    St. Louis, Missouri 63101
    jmusgrave@thompsoncoburn.com
    kknickmeyer@thompsoncoburn.com
    314-552-6000
    FAX 314-552-7000

    *Attorneys for Thompson Coburn LLP and*
    *Jan Robey Alonzo*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2015, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon:

Jonathan F. Andres
JONATHAN F. ANDRES P.C.
7733 Forsyth Boulevard, Suite 700
St. Louis, MO 63105
andres@andreslawpc.com

*Attorneys for Plaintiffs*

Sebastian Rucci
LAW OFFICES OF SEBASTIAN RUCCI
16400 Pacific Coast Hwy, Suite 212
Huntington Beach, CA 92649
SebRucci@gmail.com

*Attorneys for Plaintiffs*

Jeffrey J. Kalinowski
Jeffrey S. Russell
Herbert R. Giorgio, Jr.
BRYAN CAVE LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102-2750

*Attorneys for PNC Bank, N.A.*

　　/s/ Kenton E. Knickmeyer
Kenton E. Knickmeyer