**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

RICHARD AGUILAR, et al.,     )
                                         )
        Plaintiffs,       )
                                         )
v.                                 )     Cause No. 4:14-cv-00985-LRR
                                         )
PNC BANK, N.A.,          )
                                         )
        Defendant.      )

**<u>MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................................1

ARGUMENT ...........................................................................................................................1

    A.    PLAINTIFFS STONEWALLED PNC FROM DISCOVERING FACTS FROM HAL MILLSAP AND PRESENTED A FALSE DECLARATION ...........2

        1.    Plaintiffs' Counsel's Shifting Representation of Hal Millsap Delayed Proceedings and Frustrated PNC's Ability to Conduct Discovery ...........................................................................................3

        2.    Millsap's May 26 Declaration Was Knowingly Filed Containing False and Inaccurate Statements ..................................................4

    B.    PLAINTIFFS SECRETLY CONTACTED PNC DIRECTLY IN AN EFFORT TO OBTAIN DISCOVERY, BYPASSING PNC'S COUNSEL ............6

    C.    PLAINTIFFS ATTEMPTED TO DEPOSE FORMER ALLEGIANT TRUST OFFICER RICHARD MARKOW WITHOUT PNC'S KNOWLEDGE OR INVOLVEMENT ..................................................7

    D.    PLAINTIFFS IMPROPERLY CONTACTED REPRESENTED FORMER ALLEGIANT BANK OFFICER RICHARD MARKOW ......................................8

    E.    PLAINTIFFS ATTEMPT TO PRESENT AN INCOMPLETE RECORD TO THE COURT WITH THE TOM JERRY AFFIDAVIT ...................................8

    F.    PLAINTIFFS DELIBERATELY VIOLATE THE TERMS OF THE BOSSE STIPULATION FOR DISMISSAL THEY FILED WITH THE COURT .............................................................................................................9

    G.    PLAINTIFFS' REFUSAL TO OBEY DISCOVERY ORDERS AND RESPOND TO WRITTEN DISCOVERY SHOULD BE SANCTIONED ...........10

    H.    PLAINTIFFS DELIBERATELY PUBLISHED PRIVILEGED, CLAWED BACK DOCUMENTS, DISREGARDING THIS COURT'S ORDERS .............12

    I.    PLAINTIFFS SERVED SHAM INTERROGATORY VERIFICATIONS ...........12

    J.    PLAINTIFFS PROCURED AN INACCURATE DECLARATION FROM MATTHEW FINN AND IGNORE HIS DEPOSITION TESTIMONY ...............13

CONCLUSION .......................................................................................................................13

## INTRODUCTION

Plaintiffs' conduct is a case study in the vexatious multiplication of litigation and discovery abuse that has caused undue hardship, expense, and prejudice on PNC Bank N.A. ("PNC") and unwarranted burdens for this Court. It merits rebuke under 28 U.S.C. § 1927, the Court's inherent authority, as well as Rule 37. The list of improper conduct runs from scrubbing source bates numbers in their initial 500,000 page document dump, to contacting represented parties and witnesses to exclude PNC's counsel, to refusing to answer basic interrogatories and submitting sham verifications, to presenting false declarations to the Court, to publishing privileged, clawed-back information they told PNC they had destroyed. PNC's request for sanctions comes only after it has endured a continuing pattern of misconduct that has tainted the record and imposed tremendous costs. The requested sanctions are measured and tailored to address a pattern of misconduct that is unprecedented in our experience.

## ARGUMENT

Under 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in an court of the United States … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "Sanctions are proper under § 1927 when attorney conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Lee v. First Lenders Ins. Servs., Inc.*, 236 F.3d 443, 445 (8th Cir. 2001) (internal quotation omitted); *see also Tenkku v. Normandy Bank*, 348 F.3d 737, 743 (8th Cir. 2003). Under this standard, "[t]he court's discretion is substantial." *Schepers v. Babson-Smith*, No. 06-CV-15-LRR, 2008 WL 246086, *5 (N.D. Iowa Jan. 28, 2008).

Courts also have inherent authority to sanction litigation misconduct when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975) (citations omitted). Such power is governed "by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). Under this Court's inherent authority, appropriate sanctions include "the striking of frivolous pleadings or defenses, disciplining lawyers, punishing for contempt, assessment of attorney's fees and costs, and outright dismissal of a lawsuit." *Allapattah Servs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1373 (S.D. Fla. 2005). "A court also has the inherent authority to assess attorney fees against a party who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Katoch v. Mediq/PRN Life Support Servs., Inc.*, 2007 WL 2434052, *7 (E.D. Mo. Aug. 22, 2007) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991)).

Rule 37(b)(2)(C) provides an additional basis for an award of fees and costs to PNC, as Plaintiffs have failed to comply with prior discovery orders. As the Eighth Circuit recently observed, "[d]iscovery abuse has been a topic of widespread concern in the legal community" and "[p]reventing such abuse depends in part on reducing the reluctance of attorneys to seek sanctions and of judges to impose them." *Security Nat'l Bank v. Jones Day*, 2015 WL 5042248, at *5 (8th Cir. Aug. 27, 2015). PNC fully incorporates by reference herein its argument for sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(C), as set forth in its Motion for Sanctions Pursuant to Rule 37 and Memorandum in Support. *See* Dkt. 115.

## A. PLAINTIFFS STONEWALLED PNC FROM DISCOVERING FACTS FROM HAL MILLSAP AND PRESENTED A FALSE DECLARATION

Plaintiffs engaged in a series of efforts to frustrate PNC's ability to discover facts from Hal Millsap and, in so doing, knowingly present an inaccurate declaration to the Court.

1. **Plaintiffs' Counsel's Shifting Representation of Hal Millsap Delayed Proceedings and Frustrated PNC's Ability to Conduct Discovery.**

Plaintiffs' counsel, Sebastian Rucci, filed the lawsuit *Rosemann, et al. v. Sigillito, et al.* (*Rosemann I*), Case No. 4:10-cv-01165 on June 30, 2010, in which Hal Millsap and his wife were plaintiffs. Rucci also represented them in *Rosemann, et al. v. Spencer Fane Britt & Brown, et al.* (*Rosemann II*), Case No. 4:14-cv-00984, filed on May 23, 2014. Rucci filed the instant lawsuit the same day *Roseman II* was filed and Jonathan Andres entered as co-counsel shortly thereafter. Plaintiffs' Rule 26(a)(1) Initial Disclosures identify Millsap and his company, Retirement Benefit Solutions, as fact witnesses and note he is represented by, and may only be contacted through, Rucci. *See* Initial Disclosures at p. 15, Ex. 1. Millsap has testified that he was led to believe he and his wife were also plaintiffs in the instant case.

In fact, no complaint in this case includes Millsap or his wife as plaintiffs. *See* Dkt. 1, 6. To the contrary, the First Amended Complaint alleges Millsap was a part of the alleged RICO enterprise directed by Sigillito. *See*, Dkt. 6, ¶¶ 340-54. These RICO allegations were made while Millsap and his wife were still named plaintiffs in *Rosemann II* and still represented by Rucci.

PNC understood from the Initial Disclosures and Plaintiffs' counsel that they represented Millsap with respect to this lawsuit and that any deposition of Millsap would be coordinated by Rucci, his lawyer. As a result, PNC worked through Plaintiffs' counsel to schedule Millsap's deposition. After Rucci was incarcerated and unavailable to defend the Millsap deposition, *see* Dkt. 111, Andres indicated he would "defend" Millsap. *See* July 3 Email, Ex. 2. As this Court knows, Rucci's incarceration caused delays in scheduling Plaintiff depositions and resulted in motion practice, an extension of the discovery deadline, and additional expense for PNC.

It also had consequences for the scheduling of Millsap's deposition. The parties agreed Millsap would be deposed in St. Louis on July 8, with PNC paying his expenses. On July 7, the

eve of the deposition and after PNC had fully prepared, Andres claimed he no longer represented

Millsap and the deposition would be delayed.  *See* July 7 Email, Ex. 3.  After additional delay

while Millsap secured new counsel, PNC deposed him July 20.  *See* Deposition Excerpts, Ex. 4.

Millsap testified that both Rucci and Andres had been his attorneys in *this* lawsuit and had

represented him until just "a couple weeks ago."  *Id.* at 18-19, 201.

Millsap believed both he and his wife were plaintiffs in this lawsuit, *id.* at 20, 199, and he

was not aware of the allegations against him in the Plaintiffs' First Amended Complaint, *id.* at

199.  He was not advised by Rucci and Andres that they were alleging he was part of Sigillito's

fraudulent scheme and RICO enterprise. *Id.* at 199-202; *see also* Dkt. 6, ¶ 342.  And when asked

about the allegation and whether was a co-conspirator, Millsap responded: "Not just no, but hell

no."  *Id.* at 202.  He similarly denied other allegations by Plaintiffs' counsel implicating him in

Sigillito's fraud scheme, which allegations were submitted to this Court while Millsap was still a

plaintiff in *Rosemann II* and represented by Rucci.  *Id.* at 203 ("Again, not just no, but hell no.").

Plaintiffs' conduct was a blatant attempt to bar PNC from discovering and making use of facts

from Millsap earlier in this case and increased PNC's costs and expenses in deposing him and

engaging in various briefing.

2.  **Millsap's May 26 Declaration Was Knowingly Filed Containing False and Inaccurate Statements.**

Equally troubling is Plaintiffs' use of an inaccurate Millsap declaration.  On May 26,

2015, Plaintiffs submitted a declaration from Millsap as part of their failed effort to obtain

privileged materials from Thompson Coburn.  *See* Dkt. 52-12.  This declaration was drafted by

Plaintiffs' counsel and included: (1) the statement that Millsap "regularly communicated with

Richard Markow, the president of Allegiant Trust, and trust officer Robin Fitzgibbons, regarding

IRA loans in the BLP"; (2) the purported details of opening non-Plaintiff Betty Womack's IRA,

the terms of Womack's investment in the BLP, and the reason for her closing the account; (3) a purported conversation between Millsap and Sigillito about Womack's receiving an early payoff; (4) Womack's purported receipt of a check from Sigillito's IOLTA to repay the loan; and, (5) Allegiant's suspension of activity and Allegiant's purported refusal to take Millsap's phone calls. Dkt. 52-12, ¶¶ 7, 9-14.  Plaintiffs relied extensively on this declaration.  *See* Dkt. 52 at 8-9.

When deposed, Millsap testified that all of these statements were inaccurate and that while he had signed the document, he understood the declaration would be "corrected before it was filed."  Ex. 4 at 209-11.  The declaration filed with this Court on May 26, 2015 was not corrected by Plaintiffs' counsel according to Millsap's instructions.  *Id.* at 209, 211.  Millsap explained that the statements contained in paragraphs 7, 9, 10, 11, 12, 13, and 14 of his declaration were *all inaccurate* and that he, in fact, had *no* personal knowledge whatsoever of the information contained in Paragraphs 9, 10, 11, 12, 13, and 14.  *Id.* at 211-215.  Millsap stated that these paragraphs contained the very information he had expressly instructed Plaintiffs' counsel to delete before they submitted the declaration to the Court, as well as a date in Paragraph 17 that had not been changed.  *Id.* at 216-17.  In reality,  Millsap's only personal knowledge concerning Womack's BLP loan came from a 2015 conversation with Womack's sister, where the sister advised Millsap that Betty Womack was not aware of the loan made on her behalf in the BLP during 2001.  *Id.* at 214.

Courts will not hesitate to sanction attorneys for filing a false affidavit or declaration. *See, e.g.*, *Intellect Wireless, Inc. v. Sharp Corp.*, 2015 WL 1539605 at *19-23 (N.D. Ill. Apr. 3, 2015) (attorneys' fees); *In re Stomberg*, 487 B.R. 775 (Bankr. S.D. Tex. 2013) (attorneys' fees, costs, and monetary sanctions); *Brush v. Woodford*, 2011 WL 5320999 (E.D. Cal. Nov. 1, 2011) (dismissal); *In re Mergenthaler*, 144 B.R. 632 (Bankr. E.D.N.Y. 1992) (monetary sanction).

Submitting knowingly false representations to this Court warrants sanctions to protect the integrity of the judicial process. But in addition, Plaintiffs' conduct imposed unnecessary costs on PNC in opposing Plaintiffs' discovery motion, scheduling and deposing Millsap's deposition, and briefing discovery issues. Sanctions are necessary to correct the fallout from Plaintiffs' submission of this false declaration and are well within this Court's "substantial" discretion. *Schepers v. Babson-Smith*, No. 06-CV-15-LRR, 2008 WL 246086, *5 (N.D. Iowa Jan. 28, 2008).

### B. PLAINTIFFS SECRETLY CONTACTED PNC DIRECTLY IN AN EFFORT TO OBTAIN DISCOVERY, BYPASSING PNC'S COUNSEL

Plaintiffs *twice* bypassed PNC's counsel and directly contacted PNC while this case was pending to obtain discovery in violation of Mo. Sup. Ct. Rule 4-4.2, which prohibits attorney contact with a knowingly represented party. Plaintiffs did so by issuing two document subpoenas to a PNC records custodian in the *Rosemann v. St. Louis Bank* litigation that is also pending before this Court, No. 14-cv-983 ("*St. Louis Bank* case"). *See* February 6, 2015 and February 18, 2015 Subpoenas at Ex. 5 and Ex. 6, respectively. Plaintiffs did not advise counsel for PNC or St. Louis Bank that the subpoenas were issued. PNC learned of this by happenstance in early June. Plaintiffs' deliberate efforts to bypass counsel should be sanctioned. *See Elm Energy & Recycling (U.K.) Ltd. v. Basic*, No. 96 C 1220, 1996 WL 596456, at *7 (N.D. Ill. Oct. 9, 1996) ("Although the federal rules allow for broad discovery, they do not sanction the use of discovery in one case as a sham for conducting discovery solely for a different case or to circumvent limitations on discovery in a different action.").

When challenged as to why Plaintiffs twice evaded counsel, Rucci claimed "discovery was dormant" in this case and he "wanted to obtain the records in 10 days." *Cf. Joiner v. Choicepoint Servs., Inc.*, Civil No. 1:05CV321, 2006 WL 2669370, at *5 (W.D.N.C. Sept. 15, 2006) ("[U]se of a subpoena duces tecum under Rule 45 to bypass the requirements of Rule 34's

guidelines on document disclosure is unthinkable."). This is no excuse, nor is it even accurate. At that point, discovery was open under this Court's Scheduling Order. Plaintiffs, however, had not issued a single written discovery request to PNC. When Plaintiffs first served written discovery a month later, they sought information similar to that requested in the subpoenas.

### C. PLAINTIFFS ATTEMPTED TO DEPOSE FORMER ALLEGIANT TRUST OFFICER RICHARD MARKOW WITHOUT PNC'S KNOWLEDGE OR INVOLVEMENT

Plaintiffs also tried to use the *St. Louis Bank* case as a pretext to exclude PNC from participating in the deposition of former Allegiant officer Richard Markow. Again, PNC learned of this by pure happenstance. Markow is the target of various allegations in this lawsuit (although Plaintiffs now appear to abandon those allegations, as discovery has revealed no basis for them). Plaintiffs issued a deposition subpoena for Markow in the *St. Louis Bank* case on March 13, 2015. *See* Markow Subpoena, Ex. 7. PNC first learned of the subpoena from Markow's counsel, Drey Cooley, who assumed the subpoena had been issued in this lawsuit. Plaintiffs did not advise PNC or provide a copy of the subpoena. When Cooley's firm contacted Andres to ask whether Bryan Cave had been contacted and to confirm availability, Andres responded "Why would I contact Bryan Cave?" *See Elm Energy*, 1996 WL 596456, at *7. Questioning by St. Louis Bank counsel at the deposition confirmed Markow had no relationship to the St. Louis Bank litigation.

### D. PLAINTIFFS IMPROPERLY CONTACTED REPRESENTED FORMER ALLEGIANT BANK OFFICER RICHARD MARKOW

Plaintiffs have long known Cooley represented Markow in connection with this and other Allegiant lawsuits and noted as much in their Initial Disclosures. *See* Ex. 1 at 3. Nevertheless, Rucci directed Plaintiff Linda Givens to contact Markow directly in March 2015 to solicit his cooperation. Givens then left Markow a voicemail on his cell phone in which she requested

Markow's cooperation in this suit in exchange for a document received from "[her] lawyers" "that would absolve you of any wrongdoing." *See* Transcribed Voicemail, Ex. 8. Givens confirmed that Rucci had prompted her to contact Markow based on her personal relationship with Markow. *See* Dep. of Linda Givens, pp. 33-37, Ex. 9. She testified that she knew Markow was represented by a lawyer when she contacted him, although claimed to not know the full scope of that representation. *Id.* at 41-42. She further testified that the document she referenced in her voicemail that would "absolve" Markow had been provided to her by her lawyer. *Id.* at 46-47. Plaintiffs' counsel prevented PNC from further examining Givens as to why she contacted Markow and what Rucci told her in that regard.

This reveals a blatant disregard for the ethical rules prohibiting contact with a represented individual. *See* Mo. Sup. Ct. Rules 4-4.2, 4-8.4. Counsel plainly selected Givens as the "go-between" because of her prior relationship with Markow. And the underlying message, that Markow had committed a "wrongdoing," was an attempt to intimidate, threaten, and coerce him.

### E. PLAINTIFFS ATTEMPT TO PRESENT AN INCOMPLETE RECORD TO THE COURT WITH THE TOM JERRY AFFIDAVIT

Plaintiffs rely in various briefing on a June 10, 2015 affidavit from Tom Jerry – which Plaintiffs drafted—who served as counsel to Sigillito and Brown in the fall of 2001, purporting to authenticate several documents attached thereto. *See* Dkt. 123-1. Plaintiffs emphasize two pages of handwritten notes attached at Exhibit B to Jerry's affidavit, which Jerry claims were taken by him "sometime in October 2001." Dkt. 123-1, ¶ 5; Dkt. 123-1 at Ex. B.

Several factors concerning Plaintiffs' misuse of the Jerry affidavit are troubling and sanctionable.[1] First, in their Rule 60 motion, Plaintiffs suggest they had only recently acquired

---

[1] PNC addressed these issues in opposing Plaintiffs' motion for relief from order (Dkt. 131, pp. 4-8; Dkt. 131-1, 131-2, and 131-3) and, for the sake of brevity, incorporates same by reference.

the two pages of Jerry's notes. *See* Dkt. 123. But Jerry's notes, in unredacted form, were produced *by Plaintiffs* to PNC in discovery in January 2015. *See* Dkt. 131. Plaintiffs' insinuation that these notes are newly discovered evidence is demonstrably wrong.

Second, in preparing Jerry's affidavit, Plaintiffs' counsel heavily redacted Jerry's notes, concealing those portions that might be viewed favorably to Allegiant and PNC's positions in this case. Plaintiffs contend, for example, that Allegiant knowingly participated in Sigillito's fraud but the redacted notes reflect that Jerry was told by Sigillito or Brown that their relationship with Allegiant was "arms length," and that all Allegiant received was "$750 per year from client." Dkt. 131-1. Plaintiffs continue to rely on this selectively redacted and incomplete set of Jerry's notes on summary judgment, knowingly advancing an incomplete record. *E.g.*, Dkt. 140 at 26, n. 1; Dkt. 158 at 8-9; Dkt. 153 at 10, 16-18.

## F. PLAINTIFFS DELIBERATELY VIOLATE THE TERMS OF THE BOSSE STIPULATION FOR DISMISSAL THEY FILED WITH THE COURT

PNC repeatedly sought to depose Plaintiff Noel Bosse. In July 2015, Plaintiffs' advised that Bosse intended to dismiss her claims with prejudice and asked PNC to forego her deposition. The parties reached agreement and reduced it to writing in a Stipulation of Voluntary Dismissal. Dkt. 116. The Stipulation prohibited Plaintiffs from referencing Ms. Bosse, the Bosse family, and any of the several Bosse trusts:

> …Plaintiffs will not refer to or introduce any evidence at trial *or in dispositive motion briefing* relating to: (1) any member of the Bosse family (including, but not limited to, Noel Bosse, Margaret Bosse, or Edwin Bosse)(collectively, the "Bosse Family") or (2) any trust established by any member of the Bosse Family or for which any member of the Bosse Family was a beneficiary or trustee (including but not limited to the Edwin Bosse Trust or the Margaret Bosse Life Insurance Trust)(the "Bosse Trusts")….

*Id.* (emphasis added). In flagrant disregard of the Stipulation, Plaintiffs refer to several Bosse trusts on summary judgment. Dkt. 153 at 22; Dkt. 158 at 5.

### G. PLAINTIFFS' REFUSAL TO OBEY DISCOVERY ORDERS AND RESPOND TO WRITTEN DISCOVERY SHOULD BE SANCTIONED

PNC's Second Set of Interrogatories and PNC's Second Requests for Production of Documents sought information and records pertaining to communications, discussions, or agreements between Plaintiffs and their counsel, and non-party potential fact witnesses Sigillito, Brown, and the law firm Mark Gilbert Morse LLP and any of its principals. Plaintiffs served materially deficient responses on or about July 6, which deficiencies included, among other things, unsigned and unverified interrogatory response (yet again), spurious claims of privilege, and no privilege log. *See, e.g.,* Responses from Richard Aguilar, Ex. 10.

PNC was ultimately forced to compel production of a privilege log after Plaintiffs ignored PNC's numerous entreaties. Dkt. 126, 127. When Plaintiffs filed an opposition brief, they supplied a one-page "Privilege Log" (Dkt. 132-1), that asserted attorney-client, work product, and "confidential settlement discussions" privileges relative to records and documents involving Plaintiffs' counsel and third-parties Sigillito and Brown. *Id.* During the July 30 hearing, this Court summarily rejected Plaintiffs' various claims of privilege, granted both of PNC's Motions to Compel, and gave Plaintiffs until August 3, 2015 to provide answers responsive to PNC's Second Set of Interrogatories and to produce any records responsive to PNC's Second Requests for Production of Documents. Dkt. 134.

On August 3, 2015, Plaintiffs produced some records[2] and Rucci stated unintelligibly, that "[t]he documents are being turned over subject to the Plaintiffs claims of privilege regarding attorney client as addressed by Plaintiffs motion and subject to Plaintiffs assertion that PNC's sought third party documents by way of interrogatories outside the scope of that rule." *See* August 3 Email from Rucci, Ex. 11. Contained within these records was a May 2015

---

[2] Plaintiffs did not supplement or revise their responses to PNC's Second Set of Interrogatories.

"Agreement" between MGM and its principals, and those individuals identified as "the Plaintiffs are all known parties to litigation in federal court in St. Louis, Missouri, USA, titled *Aguilar v. PNC Bank,* Case No. 4:14-cv-985, and are represented by Sebastian Rucci, Attorney." *See* Agreement, Ex. 12. The Agreement provides that each Plaintiff releases the MGM principals from any claims or liability in exchange for their cooperation and assistance with Plaintiffs' case.[3]

Also contained within the documents produced was a June 29, 2015 "Confidential Settlement and General Release Agreement" between J. Scott Brown and Plaintiffs in various related lawsuits: the instant lawsuit; *Rosemann v. Sigillito,* 4:10-cv-1165; and *Rosemann v. St. Louis Bank*, 4:14-cv-983. *See* Agreement, Ex. 13. In this Agreement, Brown agreed to cooperate with Plaintiffs in the instant lawsuit against PNC as well as in the pending lawsuit against St. Louis Bank in exchange for Plaintiffs releasing all claims or liability against Brown, including the judgment obtained against Brown in the *Rosemann v. Sigillito* case. Also produced were June 30, 2015 "Legal Service Agreements" between both Brown's wife, Amy Brown, and his son, Justin Brown, and Rucci whereby Rucci agreed to represent both "with respect to the fraudulent loan program by Martin Sigillito." *See* Exs. 14 and 15. Also produced was a June 30, 2015 e-mail from Rucci to Brown, advising "Once I get the agreement I will be able to represent them in the remaining lawsuits." *See* Ex. 16.

The documents referenced above, as well as the other records finally produced by Plaintiffs, are not covered by any legitimate claim of privilege and they would have been withheld but for this Court's intervention. They were withheld throughout the time when PNC

---

[3] Perhaps not surprisingly, Millsap and his wife, Margaret, are listed as "Plaintiffs represented by Attorney Sebastian Rucci and subject to this agreement." *Id.*, Schedule 1, bates number 346771. This is consistent with Millsap's belief that Rucci represented him and his wife in this case.

was deposing Plaintiffs in this case and thus PNC was unable to question Plaintiffs about their purported forgiveness of claims against the MGM attorneys and Brown. Plaintiffs now rely upon the MGM attorneys' affidavits in support of their summary judgment arguments.[4] Plaintiffs' failure timely to produce these records and their bogus claims of privilege not only caused PNC to expend substantial legal costs to obtain the documents but block PNC from taking proper discovery.

### H. PLAINTIFFS DELIBERATELY PUBLISHED PRIVILEGED, CLAWED BACK DOCUMENTS, DISREGARDING THIS COURT'S ORDERS

In their recent motion to compel (Dkt. 159), Plaintiffs quoted from inadvertently-produced privileged documents that PNC had clawed back pursuant to the Court's Protective Order. Plaintiffs have disregarded the Court's Protective Order, its earlier rulings maintaining privilege over these materials, the Federal Rules of Civil Procedure, and Missouri ethical rules by quoting the privileged materials. PNC has fully briefed this issue and will not repeat the factual basis here. *See* Dkt. 161 at 10-13.

### I. PLAINTIFFS SERVED SHAM INTERROGATORY VERIFICATIONS

PNC has previously advised the Court of sham interrogatory verifications for Plaintiffs Lewis Vollmar, William Phillips, and Rudolf Ouwens. Dkt. 115; Dkt. 120. Donald Horner is now on that list. When deposed, Horner confirmed his signature was not on the interrogatories, that he did not know who had signed his signature, and he actually asked Andres whose signature it was (Andres remained silent). *See* Depo. of Donald Horner, p. 76, Ex. 17. Horner advised he had dealt with Rucci concerning the interrogatory responses:

Q.      …But you indicated that you spoke to somebody about that signature?

---

[4] PNC pointed out some of the defects in these affidavits in earlier filings and incorporates same by reference. *See* Dkt. 67 at 4-5; Dkt. 155 at 8-9.

| A. | I marked up this interrogatory in a couple of spots and e-mailed those pages and the signature page that I had signed to Sebastian. |
| Q. | Mr. Rucci? |
| A. | Yes. |
| Q. | But the page you e-mailed and signed is not this page? |
| A. | That's correct. |
| Q. | All right.  Did you ever see this page? |
| A. | Not with this particular signature on it, no.  It's certainly not an attempt at forgery. |
| Q. | I'm just trying to understand the facts. |
| A. | Yeah.  I think it was received too late, I think. |

*See id.* at 75-76.  Horner did not sign and verify the interrogatory responses as required by this Court's Order and the Federal Rules.  And the fact that Horner testified these responses were "received too late" suggests Horner's edits were never made.

**J.      PLAINTIFFS PROCURED AN INACCURATE DECLARATION FROM MATTHEW FINN AND IGNORE HIS DEPOSITION TESTIMONY**

Plaintiffs procured an inaccurate declaration from Matthew Finn under dubious conditions.  Finn, seeing how Plaintiffs distorted and manipulated this, cleared the record.  Yet Plaintiffs continue to ignore Finn's sworn deposition and direct the Court to a declaration that is inaccurate, inherently unreliable, and not competent trial testimony.  PNC has detailed Plaintiffs' tactics and the inaccuracies in Finn's declaration in prior briefing and incorporates same by reference. *See* Dkt. 155 at 9-10 & n. 6; Dkt. 156, ¶¶ 128-35.

**CONCLUSION**

For the reasons stated above, the Court should sanction this unprecedented pattern of abuses and vexatious tactics.  Those sanctions should include: (i) striking all discovery responses that fail to comply with the Federal Rules of Civil Procedure, including Plaintiffs' interrogatory answers; (ii) precluding Plaintiffs from introducing any evidence or advancing any argument that should have been disclosed in response to PNC's written discovery or under Rule 26(a)(1); (iii) precluding Plaintiffs from introducing any evidence or advancing any argument obtained through

Plaintiffs' deceptive, sharp practices, including evidence from J. Scott Brown, Martin Sigillito, Matthew Finn or Tom Jerry as a result of their failure to respond to written discovery on these issues; (iv) striking the Millsap, Finn, and Jerry declarations and any of Plaintiffs' pleadings, briefing, and arguments that rely upon them as a result of Plaintiffs' manipulative practices with the misleading declarations they drafted and submitted; (v) awarding PNC its attorneys' fees and costs associated with its efforts to defend against such vexatious and bad-faith behavior; (vi) imposing a monetary sanction on Plaintiffs and Plaintiffs' counsel; and (vii) any further relief the Court deems just and proper under the circumstances. PNC submits that the relief sought is a measured and specific set of sanctions tailored to address Plaintiffs and Plaintiffs' counsel's misconduct.

Dated: September 11, 2015                    Respectfully submitted,

                                             BRYAN CAVE LLP


                                             /s/*Jeffrey S. Russell*
                                             Jeffrey J. Kalinowski, EDMO #29926MO
                                             Jeffrey S. Russell, EDMO #35158MO
                                             Herbert R. Giorgio, Jr., EDMO #58524MO
                                             Darci F. Madden, EDMO #51463MO
                                             One Metropolitan Square
                                             211 North Broadway, Suite 3600
                                             St. Louis, MO  63102-2750
                                             Phone:  (314) 259-2000
                                             Fax:  (314) 259-2020

                                             Attorneys for Defendant
                                             PNC Bank, N.A.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed using the Court's CM/ECF system on September 11, 2015, which will serve notice upon all counsel of record.

/s/*Jeffrey S. Russell*